**GREENTREE LABORATORIES, INC., Plaintiff,**

v.

**G.G. BEAN, INC. and George G. Bean and Grace L. Bean, Defendants.**

**Civ. No. 88–0115–P.**

United States District Court, D. Maine.

July 26, 1989.

---

David M. Lipman, Lipman & Katz, Augusta, Me., Stanley R. Jones, Tustin, Cal., for plaintiff.

Michael Feldman, Glover & Feldman, Brunswick, Me., for defendants.

## OPINION AND ORDER

GENE CARTER, District Judge.

In this action Plaintiff seeks relief for alleged trademark infringement under 15 U.S.C. § 1114 and for alleged false designation of origin or false representation under 15 U.S.C. § 1125. It also asserts claims for common law unfair competition and violation of the Maine Deceptive Trade Practices Act, 10 M.R.S.A. § 1212.

Plaintiff has held a federally registered trademark for ODOKLEEN since November 23, 1976. According to the trademark registration, ODOKLEEN is an all-purpose deodorizing cleaning preparation. The product label suggests ODOKLEEN for use in hospitals, clinics, laboratories, convalescent homes, veterinary hospitals, kennels, catteries, sickrooms, rest rooms, locker rooms, kitchens, laundries, nurseries, automobiles, vans, campers, trailers, and boats. Its main use, however, is as an animal care product.

About twenty years ago, Defendant G.G. Bean, Inc. began advertising a line of products with KLEEN in their names. Around 1978, George Bean, president of G.G. Bean, Inc., invented a product to neutralize skunk odor on his dogs, and he began to market it as SKUNK KLEEN. In 1980 or 1981, he began to market the same product, SKUNK KLEEN, using a different name, URINE KLEEN. In the early 1980s, he also developed and began marketing FERRET KLEEN, FISH ODOR KLEEN, HUNTER ODOR KLEEN, and PET ODOR KLEEN. More recently, Defendant has begun marketing LITTER BOX KLEEN, REFRIGERATOR ODOR KLEEN, and SMOKE ODOR KLEEN. ODOR KLEEN, which is URINE KLEEN in a one-gallon bottle, came on the market in 1984. Around that time Bean began to advertise the products nationally. The complex of Bean products was marketed in part in display cases backed with a sign saying "ODOR KLEEN Products" and containing varying numbers of eight-ounce bottles of the various Bean products.

In late 1984, R. Thomas Davies, then president of Greentree Laboratories, Inc., telephoned Mr. Bean in response to a Bean ODOR KLEEN advertisement he had seen, and told him that Greentree had a registered trademark in the mark ODOKLEEN. The Court finds that during the

discussion, Bean told Davies that ODOR KLEEN was not sold much and that he would change its name. Davies in turn told Bean to use up his remaining inventory of bottles for ODOR KLEEN. This conversation was memorialized in part in PX4–L, a subsequent letter alleging infringement because of Bean's advertising of ODOR KLEEN after the telephone call. The letter was received by George Bean on February 4, 1985.

Subsequently, Greentree's vice president, Maureen Hewitt, and its attorney, Stanley Jones, sent infringement letters. Bean did not recall receiving any of the letters, including the one from Davies for which he had signed, and did not respond to them. The instant lawsuit ensued.

### Discussion

Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114, provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, distribution, or advertising or any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, ...

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Likelihood of confusion is also an element of the claims for false representation or designation of origin as asserted here, *see Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir.1977), of the claim under the Maine Deceptive Trade Practices Act, *see* 10 M.R.S.A. § 1212, and *L.L. Bean, Inc. v. Drake Publishing Co.*, 625 F.Supp. 1531, 1535 (D.Me.1986) (rev'd on other grounds, 811 F.2d 26 (1st Cir. 1987)), and the claim for unfair competition under the common law. *See Hubbard v. Nisbet*, 159 Me. 406, 408, 193 A.2d 850 (1963); *see also L.L. Bean*, 625 F.Supp. at 1536.

■ Likelihood of confusion means confusion as to the source of the product,

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980), and is determined by considering eight factors: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark. *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir.1981).

### Similarity of Marks

■ The Court looks at the total effect of the designation rather than comparing individual features to determine the similarity of the marks. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir.1987). "Words may be recognized as similar because of sound, appearance, and meaning ... and a finding of similarity may be based on appearance alone." *Id.* (citation omitted). In this case it is plain that the marks ODOKLEEN and ODOR KLEEN are very similar in sound, appearance, and meaning. There is only one letter of difference, making the appearance and sound virtually identical. The concept conveyed by each is clearly the same.

■ The Court does not find that the fact that the name G.G. Bean appears someplace on each product bottle renders the marks dissimilar. In the *Pignons* case, the allegedly infringing mark "Alpha" always appeared in close proximity with the equally prominent and uniquely identifying designation "Polaroid SX–70," such as "Polaroid SX–70 Alpha 1." *Pignons*, 657 F.2d at 487. The G.G. Bean, Inc. name is not part of the designation in the sense that Polaroid SX–70 was, and it is certainly not of equal prominence to ODOR KLEEN on the bottles. G.G. Bean does appear prominently in the advertisements, but it is not always as prominent as the ODOR KLEEN designation.

Defendants also argue that the marks are not likely to be confused because their packaging differs significantly and displays

the name G.G. Bean prominently. The Court of Appeals for the First Circuit has accepted that argument "under certain circumstances" which are not present here. *See, e.g., Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir.1983) (similarity less when mark used differently on different products); *Fisher Stoves*, 626 F.2d at 195 (in the case of a high priced, single purchase item little likelihood of confusion when manufacturer's name displayed); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 378–79 (1st Cir.1980) (no infringement of proprietary right when mark unprotected by trademark and manufacturer's distinctive logo displayed next to allegedly similar mark). The Court notes that while the ODOR KLEEN products themselves carry the Bean house mark, the display case housing them does not.

The Court does find, however, that there is much less similarity between the ODOK-LEEN trademark and the other allegedly infringing marks such as PET ODOR KLEEN, FISH ODOR KLEEN, and HUNTER ODOR KLEEN. The marks appear different from ODOKLEEN because on the products, FISH ODOR, PET ODOR, and HUNTER ODOR are on separate lines from the word "KLEEN." The marks sound different because the aural attention is attracted to the FISH, PET or HUNTER. Also, the meaning is not identical since the specialized nature of the product is denoted in its name.

### Similarity of the Goods

The products of both companies in this case are supposed to eliminate odors; otherwise, they are different in many respects. Greentree's product comes in a clear bottle, with a paper label affixed, and with a screw-off cap. Bean's come in an opaque white bottle with the product name printed on the plastic and, with the exception of REFRIGERATOR ODOR KLEEN, have spray pump tops. ODOR KLEEN is packaged only in one-gallon containers, while ODOKLEEN comes in a variety of sizes,[1] including gallons. ODOKLEEN is a concentrate which must be diluted. ODOR KLEEN products are sold in the strength concentration at which they are to be used. ODOKLEEN is intended to clean as well as deodorize, while the ODOR KLEEN products are designed solely to eliminate odor. Greentree's product is toxic and carries a warning to that effect, while Bean's is not toxic. *See Pignons*, 657 F.2d at 487–88 (both products cameras, but features and packaging different).

### The Relationship Between the Parties' Channels of Trade and Their Advertising and Classes of Prospective Customers

Greentree has advertised ODOKLEEN extensively in radio advertisements, by direct mass mailings to kennels, catteries, pet shops, veterinarians, and in ads in the following magazines: *Dog World, Boarding Kennel Proprietor, AKC Gazette, Groom and Board, Vet Cards, Cats Magazine, Lab Animal, Community Animal Control, Animal Hospital Product News, Bird World, Cat Fancy, Pet Age, Veterinary Medicine/Small Animal Clinician, California Veterinary Medical Association, Groomers Gazette*, and *Pets/Supplies/Marketing*. Ms. Hewitt described the magazines in which ads were placed as trade journals for pet professionals and hobbyists. Greentree had a booth at one trade show, the 1988 WWPSA Pet Industry Trade Show and Grooming Contest in Long Beach, California.

Bean has also advertised in the magazines *Pet Dealer, Pet House News, Pet Business, Pet Age*, and *Pet Supply Marketing*.[2] Although the types of magazines in which the parties have advertised are the same, there apparently is little overlap in the placement of their ads. Bean also markets its products through three national mail order catalogs. Bean exhibits extensively at pet and housewares shows, partic-

---

1. The specialized ODOR KLEEN products, *e.g.*, FISH ODOR KLEEN, PET ODOR KLEEN, come in 8–ounce, and sometimes 2–ounce, containers.

2. The Court assumes that PET SUPPLY MARKETING and PETS/SUPPLIES/MARKETING, referred to as "PSM," are the same periodical.

ipating in approximately twenty-five in the last three years. It exhibited at the Long Beach show during a year in which Ms. Hewitt attended but was not exhibiting. Veterinarians, groomers, pet store owners, distributors and individuals are the viewers and potential customers at these exhibitions.

Both ODOKLEEN and ODOR KLEEN are listed on the same page in the trade names section of the *Buyer's Guide* used by pet professionals. Each trade name, however, is followed immediately by the name of its manufacturer.

The Court finds that the parties' desired channels of trade and classes of prospective customers are very similar. The advertising itself, however, has had different emphases, with Greentree utilizing direct mail and radio, which Bean does not, while Bean has used catalogs not used by Greentree.

In all of the magazines in which there might be advertising overlap, there is no possibility of confusion as to the source of the product because Bean's name and address always appear prominently in the ad. That is not the case for the catalog ads in which the Bean name is obscured in the picture. The Court cannot find that the intended consumers from the catalogs are so sophisticated or the product so specialized that confusion as to its source could never result. Thus, there is a slight possibility that a purchaser might mistake a catalog ODOR KLEEN product as originating with Greentree. *See, e.g.,* PX17–1. There is also the possibility, suggested at trial, that a consumer uninformed as to the manufacturer's name and desiring the Greentree product will be steered through the *Buyer's Guide* to Bean's product due to the similarity of the mark.

### Evidence of Actual Confusion

Plaintiff attempted to show actual confusion by submitting letters it has received requesting ODOR KLEEN or ODORKLEEN rather than ODOKLEEN. As the court stated in *Pignons,* a case in which Pignons had received registration cards describing Alpha rather than its Alpa camera.

"Beyond demonstrating what is obvious—that 'Alpa' is 'Alpha' minus an 'h'—this evidence demonstrates only that for over 20 years Pignons' trademark has been subject to misspelling. There is nothing in the cards or letters to suggest confusion of products or business." *Pignons,* 657 F.2d at 482. Based on the record before it, the Court finds that there has been no actual confusion between Bean products and ODOKLEEN shown here either. The letters presented by Ms. Hewitt reflect simple misspelling rather than confusion as to source. No other evidence showed customer confusion, and the testimony of Ms. Hewitt and Mr. Bean belied the suggestion that consumers mistake Bean's products for Greentree's.

The court in *Pignons* went on to say that [e]vidence of actual confusion is not invariably necessary to prove likelihood of confusion; on the other hand 'absent evidence of actual confusion, when the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion.'

At the time of trial, ODOR KLEEN and the ODOR KLEEN line of products had been on the market for over four years, aimed at virtually the same market as ODOKLEEN. Greentree's inability to demonstrate any consumer confusion "strongly indicates" that Bean's use of the mark ODOR KLEEN has not created a likelihood of confusion. *See Pignons,* 657 F.2d at 491.

### Bean's Intent in Adopting the Mark

Bean had been marketing products with the name "KLEEN" (Dishwasher Kleen, Humidifier Kleen) since 1968 or 1969. This was around the same time that Greentree entered the market with ODOKLEEN, but seven or eight years before the mark was registered. Mr. Bean testified that he was not certain why he had chosen to spell KLEEN with a K—"It seemed like a good idea.... Maybe the artist suggested it that did the art work." He continued using KLEEN in conjunction with other designations as he invented new products—

SKUNK KLEEN, URINE KLEEN, PET ODOR KLEEN, et cetera, and in 1984[3] began marketing a product called ODOR KLEEN. Bean testified, and the Court believes him, that the name "ODOR KLEEN" was not chosen because of any exposure to Greentree's product. *See Astra*, 718 F.2d at 1208. ODOR KLEEN, which is URINE KLEEN with a different name, was named because some Maine customers wanted URINE KLEEN in a larger container but Bean did not want to market URINE KLEEN in a cumbersome gallon container. Although the ODOR KLEEN mark is similar to ODOKLEEN and the products are similar in some respects, the similarity of the name "ODOR KLEEN" to Bean's long line of KLEEN products and to the specialized ODOR KLEEN products does not make a presumption of deliberate adoption appropriate here. *See id.* at 1208. Moreover, the lack of enthusiasm with which Bean marketed ODOR KLEEN,[4] trying not to sell it unless someone asked for URINE KLEEN in a larger size, indicates that it did not intend to capitalize on goodwill surrounding Greentree's trademark.

### Strength of the Mark

■ Strong marks receive broader protection against infringement than weak marks. *Pignons*, 657 F.2d at 492. The Court does not find, however, that ODOKLEEN is a particularly strong mark. While the spelling and conjunction of "ODO" and "KLEEN" are somewhat arbitrary or whimsical, aurally the name is descriptive of the product. While Greentree has advertised extensively and for years ran a free-sample program for ODOKLEEN, its efforts to establish a strong mark seem not to have been successful for its sales have remained constant for several years despite heavy promotional expenditures.

### Conclusion

On balance, the record does not show that there is a likelihood of confusion between Defendant's ODOR KLEEN and ODOR KLEEN line of products and Plaintiff's ODOKLEEN product. It is true that the ODOR KLEEN mark is similar to ODOKLEEN, there is a limited similarity in the products, and there is some overlap of channels of trade, advertising, and potential customers. There has not been, however, sufficient evidence of likelihood of confusion produced to overcome the strong presumption against such a finding generated by absence of actual confusion where the products have been in the same market for a significant time. Bean is clearly identified as the source of ODOR KLEEN products in almost all of the advertising, and there is no evidence that Defendant intended to copy or profit from Plaintiff's mark. Moreover, the ODOKLEEN mark is relatively weak. Without proof of likelihood of confusion, all of Plaintiff's claims must fail.

Accordingly, it is hereby *ORDERED* that judgment shall enter for Defendants.

---

**3.** Mr. Bean's testimony says ODOR KLEEN was introduced "in the range of 1985" and from PX4, which indicates Bean and Davies spoke in late 1984 about ODOR KLEEN, the Court infers that the "range of 1985" includes 1984.

**4.** The Court notes that the always small volume of ODOR KLEEN sold had dwindled by 1988 to virtually nothing, with the remaining empty bot-

tles being used as scoops. Although the ODOR KLEEN product appeared in a few ads, Defendant plainly did not attempt to market it vigorously. It did not develop machinery to fill the bottles and generally just used ODOR KLEEN to meet specific requests for URINE KLEEN in a large bottle.