**UNIVERSAL MOTOR OILS CO., INC., a Kansas Corporation, Plaintiff,**

v.

**AMOCO OIL COMPANY, a Maryland Corporation, Defendant.**

Civ. A. No. 89–1662.

United States District Court, D. Kansas.

Dec. 4, 1992.

William F. Bradley, Jr., John T. Moore, Hinkle, Eberhart & Elkouri, Wichita, KS, for plaintiff.

Robert W. Coykendall, Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Robert M. Newbury, Thomas P. Arden, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is a trademark infringement action brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the common law. The matter is now before the court on motions for partial summary judgment by the plaintiff and the defendant. Plaintiff moves for partial summary judgment on the issue of liability.[1] (Doc. 102). Defendant moves for partial summary judgment on the issue of damages. (Doc. 89).

Plaintiff and defendant both manufacture and distribute petroleum products. Plaintiff sells its own products and distributes products for several major oil companies. Plaintiff's primary market area for its own products covers the states of Colorado, Kansas, Missouri, Nebraska, Oklahoma, and Texas. Both companies market lines of lubricants for diesel fueled vehicles. Plaintiff produces and sells a line of lubricants labeled "DYNA–PLEX 21C." This line of products has been on the market using the "DYNA–PLEX 21C" trademark for more than twenty years. The United States Patent and Trademark Office issued a certificate of registration for plaintiff's trademark "DYNA–PLEX" in 1970 and for plaintiff's trademark "DYNA–PLEX 21C" in 1982.

When defendant introduced a new line of diesel engine lubricants in 1989, it considered several names, including "AMOCO LS," "AMOCO 500LS," "AMOCO LA," and "AMOCO 21C–LS." Defendant knew that "DYNA–PLEX 21C" was plaintiff's registered trademark, but defendant's counsel apparently believed that using "AMOCO 21C–LS" would not cause confusion. Defendant ultimately chose to use "AMOCO 21C." Defendant claims to have chosen "21C" to indicate 21st Century. Although "AMOCO 21C," unlike "DYNA–PLEX 21C," was designed for use with low sulfur fuel in compliance with future Environmental Protection Agency regulations, the two products were in direct competition.

Plaintiff asserts that the defendant's use of the mark "AMOCO 21C" violates plaintiff's registered and common law trademarks. This court has previously issued a preliminary injunction against the defendant, prohibiting its use of the "21C" designation. The preliminary injunction was subsequently modified to prohibit defendant's use of the mark "AMOCO 2100." Defendant used the label "AMOCO 21C"

---

1. Plaintiff has also filed a motion for summary judgment. (Doc. 92). However, this motion is nearly identical to and presents the same issues as the motion for partial summary judgment.

Accordingly, the court's discussion of plaintiff's motion for partial summary judgment applies equally to the motion for summary judgment.

from November 1989 to May 1990, when the preliminary injunction was issued. Defendant used the label "AMOCO 2100" from May 1990 to September 1990, when the preliminary injunction was modified. Defendant has thereafter used the label "AMOCO PREMIER II" and indicates that it will continue to do so regardless of the outcome of this action.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513. If the moving party will bear the burden of proof at trial, the moving party must present sufficient evidence to support a judgment in its favor. "A summary judgment is neither a method of avoiding the necessity for proving one's case nor a clever procedural gambit whereby a claimant can shift to his adversary his burden of proof on one or more issues." *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir.1970).

I. Plaintiff's Motion for Partial Summary Judgment

■ Plaintiff moves for summary judgment on the issue of whether defendant infringed on plaintiff's trademark. In order to show trademark infringement, the plaintiff has the burden to prove: (1) that the plaintiff has a valid trademark; and (2) that the defendant's use of the contested mark is likely to cause confusion. *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277 (3d. Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Munters Corp. v. Matsui America, Inc.*, 909 F.2d 250 (7th Cir.), *cert. denied*, 498 U.S. 1016, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990); *Dieter v. B & H Indus., Inc.*, 880 F.2d 322 (11th Cir.1989), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

■ There is no question that plaintiff has a registered trademark in "DYNA–PLEX 21C," and it appears the trademark is incontestable. However, plaintiff may not be able to prove that defendant infringed upon plaintiff's registered trademark. The first issue, then, is whether plaintiff has a common law trademark in the label

"21C." Plaintiff did not register "21C" as a separate trademark. Plaintiff asserts that its product line was commonly referred to as "21C." Defendant counters that plaintiff did not use "21C" on its labels or otherwise except along with "DYNA–PLEX." In fact, defendant points to evidence that the product line was sometimes referred to simply as "DYNA–PLEX." There is a genuine issue as to whether plaintiff established a common law trademark in "21C."

Second, plaintiff must prove that the defendant's use of "AMOCO 21C" and "AMOCO 2100" was likely to cause confusion as to the source of the products. Plaintiff claims that confusion was likely and that defendant's use of the mark was willful, with knowledge of plaintiff's registered trademark, and with the intent of deriving a benefit from plaintiff's good will. Defendant counters that its use of the label "AMOCO 21C" and "AMOCO 21C" was not confusingly similar to plaintiff's "DYNA–PLEX 21C" or its common law trademark of "21C" and that defendant did not wilfully and deliberately infringe on plaintiff's registered trademark.

■ The likelihood of confusion is a question of fact. *Coherent, Inc. v. Coherent Technologies, Inc.*, 935 F.2d 1122, 1125 (10th Cir.1991). The 10th Circuit has identified several factors to determine whether there is a likelihood of confusion:

"(a) the degree of similarity between the designation and the trade-mark of trade name in:

(i) appearance;

(ii) pronunciation of the words used;

(iii) verbal translation of the pictures or designs involved;

(iv) suggestion;

(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

(d) the degree of care likely to be exercised by purchasers."

*Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (1983) (quoting Restatement of Torts § 729 (1938)). This list of factors is not exhaustive, and the controlling question is whether, in light of the whole background of the marketplace, confusion is likely. *Id.* at 940–41. The test for likelihood of confusion is the same whether the case is brought under the Lanham act or the common law. *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir.1984). Similarities are weighed more heavily than differences, especially when the marks are used on virtually identical products packaged in the same manner. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir.1986).

■ Clearly there is some visual and aural similarity between the marks. However, the similarity is not absolute. The defendant uses its company name along with "21C," but this does not necessarily eliminate confusion. *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 840 (4th Cir.1990). *See also Greentree Lab. v. G.G. Bean, Inc.*, 718 F.Supp. 998 (D.Me.1989). *But see Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir.1981).

■ The defendant's intent in using "21C" and "2100" is unclear. However, "wrongful intent to trade upon another's good will may be inferred where it is shown that the defendant knew of the plaintiff's mark, had freedom to choose any mark, and just happened to choose a mark confusingly similar to plaintiff's mark." *Hydril Company v. Blowout Prevention, Inc.*, 221 U.S.P.Q. 1153 (W.D.Okl.1983) (citing *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108 (S.D.N.Y.1981). *See also Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir.1987) ("Given the unlimited number of possible names and symbols that could serve as a trademark, it is understandable that a court generally presumes one who chooses a mark similar to an existing mark intends to confuse the public."). In this case, defendant claims it chose "21C" to reflect the 21st Century theme of its advertising. Moreover, defendant argues that it

decided to use the "21C" mark before it knew of plaintiff's use of the mark. However, it is undisputed that defendant's attorney discovered plaintiff's registration of the trademark "DYNA–PLEX 21C" before any of defendant's "AMOCO 21C" was packaged and sold. Defendant's attorney remarked at the time that plaintiff might believe using the label "AMOCO 21C–LS" was infringement, but that, in his opinion, the marks were not so confusingly similar as to subject defendant to liability.

Defendant contends that users of "AMOCO 21C" and "DYNA–PLEX 21C" exercise a high degree of care in the selection of engine lubricants because they depend on these products for their livelihoods. Plaintiff argues that engine oil is a relatively inexpensive item, costing around one dollar per quart, and that consumers generally exercise little care in the selection of items that cost so little. However, the customers for these products usually buy in bulk. This makes the items more costly and presumably causes the purchasers to exercise greater care. Defendant also presents evidence that plaintiff and defendant market their products differently.

Another factor to be considered is whether any actual confusion has occurred. Although some courts have inferred that confusion was unlikely where no actual confusion occurred, *See McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1136 (2d Cir.1979); *Educational Dev. Corp. v. Economy Corp.*, 562 F.2d 26, 30 (10th Cir. 1977), any lack of actual confusion is not a compelling factor in this case. In the cases cited the defendants had used the allegedly infringing marks for several years without causing confusion. *McGregor–Doniger*, 599 F.2d at 1129 (six years); *Educational Dev. Corp.*, 562 F.2d at 28 (four years). Here defendant was enjoined from using the allegedly infringing mark months after it began marketing the product. It is likely that by quickly seeking a preliminary injunction, plaintiff prevented some actual confusion that otherwise would have occurred. Plaintiff should not be disadvantaged for taking prompt action to protect its registered trademark.

The likelihood of confusion in this case was increased by the parties' positions in the oil industry. There is great disparity in the size of the corporate parties. The activities of Amoco's sales and advertising departments dwarf those within plaintiff's capabilities even for plaintiff's limited sales area. This creates a situation of reverse confusion, "confusion as to the origin of plaintiff's product." *Big O Tire Dealers v. Goodyear Tire & Rubber, Inc.*, 561 F.2d 1365, 1371 (10th Cir.1977).

Whether defendant infringed on plaintiff's trademark is a question of fact. Moreover, because defendant's intent in choosing to label its product "AMOCO 21C" is unclear, it cannot be said at this stage whether this is an exceptional case that would entitle plaintiff to attorney fees if it prevails on its claims. There are several genuine issues in dispute. Therefore, granting plaintiff's motion for partial summary judgment would be inappropriate.

II. Defendant's Motion for Partial Summary Judgment

Defendant moves for partial summary judgment, arguing that plaintiff cannot show that it is entitled to recover actual damages, punitive damages, or attorney fees against defendant.

*A. Actual Damages*

Defendant contends that plaintiff cannot present sufficient evidence of actual damage to necessitate a trial on the issue. Plaintiff has repeatedly stated that it cannot show a loss of sales due to the defendant's alleged infringement. Defendant argues that because plaintiff cannot show this measure of actual damages, plaintiff can recover no damages. However, plaintiff offers two alternative measures for computing actual damages in this case: (1) accounting for defendant's profit on the sales of engine lubricants labeled with the infringing marks; and (2) the expenses plaintiff will be forced to bear in corrective advertising.

The court can order an accounting of profits upon a proper showing that defendant may have wrongfully gained from

its infringement. The plaintiff must show that the defendant made sales under the infringing label. *Wesco Mfg. v. Tropical Attractions of Palm Beach*, 833 F.2d 1484, 1488 (11th Cir.1987). The burden then shifts to the defendant to show that its legitimate expenses outweighed its gross sales. *Id.* Defendant contends that it did not turn a profit on its sales of "AMOCO 21C" and "AMOCO 2100" when it was sold under the allegedly infringing label because its gross sales for the period of alleged infringement were outweighed by its expenses in introducing the line. However, the plaintiff has produced evidence that defendant improperly allocated some of its expenses. For example, much of the costs for promotion and development should be attributed to the product under the "PREMIER II" label.[2] The defendant's overhead costs cannot properly be allocated as costs for the purpose of this suit. At this time, the court cannot conclude that the defendant is entitled to judgment as a matter of law on this issue.

 Defendant argues that plaintiff has not engaged in any corrective advertising and therefore cannot recover advertising expenses. However, if plaintiff can show that it cannot afford to pay for the advertising that would be necessary to correct defendant's alleged infringement, then it can recover an appropriate amount for future corrective advertising. *Big O Tire Dealers*, 561 F.2d at 1375. In the 10th Circuit, the amount of damages for prospective corrective advertising varies according to the amount the defendant spent on infringing advertising. That amount is proportioned according to the geographic area where plaintiff and defendant both operate, then divided in one-fourth to correspond to the FTC's regulations for corrective advertising. *Id.* Plaintiff argues that it could not have afforded to engage in sufficient corrective advertising. Defendant argues that plaintiff could have afforded such advertising. However, the court does not have before it the necessary evidence to decide how much corrective advertising in this case would cost, much less to decide whether plaintiff has the necessary resources to conduct a corrective advertising campaign.

Alternatively, plaintiff argues that it increased its sales efforts as a result of the defendant's infringement and that this constitutes compensable corrective advertising. Plaintiff claims that it spent over $22,000 in promotions and prizes and $1000 on a hired publicist to counteract the mistaken notion that "21C" was defendant's product.[3] This is sufficient evidence of corrective advertising costs to create a genuine issue of fact.

### B. Punitive Damages

 Defendant also argues that plaintiff cannot recover punitive damages. First defendant contends that punitive damages are not recoverable under the Lanham Act because the statute does not provide for punitive damages. However, punitive damages are recoverable in the discretion of the trial court under Kansas law "whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy." *Nordstrom v. Miller*, 227 Kan. 59, syl. ¶ 12, 13, 605 P.2d 545 (1980). As discussed below, there is a genuine issue of fact as to whether the defendant's actions constituted willful infringement.

---

2. The defendant argues that its entire advertising cost, $578,389.96 should be deducted. (The total gross revenue for that period was $594,-503.77). The plaintiff argues, however, that some of that expense should be allocated to the product line under the name of "AMOCO PREMIER II." The defendant's executives surmise that the advertising of "AMOCO 21C" is of no benefit to the product line under the new name. However, defendant has presented no evidence that it had to start its advertising from scratch when the product name was changed. Moreover, the defendant has continued to use much of the same advertising copy, merely changing the name of the products shown.

3. The plaintiff also notes the expense it has incurred in conducting this lawsuit to stop the defendant's alleged infringement. However, these expenses clearly are not recoverable as actual damages. In fact, plaintiff argues separately for recovery of attorney fees, as discussed below.

Second, defendant argues that under Kansas law, the plaintiff cannot recover punitive damages unless it recovers actual damages. *Lindquist v. Ayerst Lab., Inc.,* 227 Kan. 308, syl. ¶ 4, 607 P.2d 1339 (1980). Because defendant believes plaintiff can prove no actual damages in this case, defendant believes plaintiff cannot recover punitive damages either. Plaintiff does not dispute that Kansas law requires recovery of actual damages in order to recover punitive damages. However, as discussed above, there is an issue of material fact in this case concerning whether plaintiff can prove actual damages, and especially a significant amount.

### C. Attorney Fees

Attorney fees are recoverable under the Lanham Act in appropriate cases. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. 1117(a). A case of willful and intentional infringement is an exceptional case. *VIP Foods, Inc. v. Vulcan Pet, Inc.,* 675 F.2d 1106, 1107 (10th Cir. 1982); *The Post Office v. Portec, Inc.,* 913 F.2d 802, 812 (10th Cir.1990), *vacated on other grounds,* — U.S. ——, 111 S.Ct. 1299, 113 L.Ed.2d 235 (1991). A plaintiff can be a prevailing party without collecting a damage award, although a lack of damages is a factor for determining whether the case is exceptional. *See Post Office,* 913 F.2d at 812.

Defendant argues that because it relied on the advice of counsel, its conduct is not willful, and therefore, attorney fees are not appropriate in this case. The Tenth Circuit Court of Appeals has stated that "under certain circumstances, a party's reasonable reliance on the advice of counsel may defuse otherwise willful conduct." *TakeCare Corp. v. Takecare of Oklahoma, Inc.,* 889 F.2d 955, 957 (10th Cir.1989). However, it is not clear that if defendant relied on counsel's advice, the reliance was reasonable. It is the court's recollection of the evidence without consulting the record that the advice of defendant's counsel was given by him "with tongue in cheek" and accepted by defendant's manager "with a wink." Furthermore, defendant's attorney

advised defendant that using the label "AMOCO 21C–LS" would not cause confusion in the marketplace. Counsel did not express an opinion as to "AMOCO 21C," but suggested meeting to discuss the infringement risks and possible label changes.

IT IS BY THIS COURT THEREFORE ORDERED that plaintiff's motion for partial summary judgment (Doc. 102) is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Doc. 92) is hereby denied.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment (Doc. 89) is hereby denied.

Under the court's new district rules and the intent of the Biden bill, the court deems a status conference imperative to discuss early disposition of this case. The court's clerk will confer with counsel and expeditiously set such a conference by minute order.