**DEVORE & SONS, INC., Plaintiff,**

v.

**THOMAS NELSON, INC., Defendant.**

**Civil Action No. 96–1425–MLB.**

United States District Court,
D. Kansas.

May 19, 1998.

**1158**

Charles E. Millsap, Gregory J. Stucky, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for plaintiff.

Carol A. Beier, Foulston & Siefkin L.L.P., Wichita, KS, Jay Bowen, Sarah W. Anderson, Timothy L. Warnock, Bowen, Riley, Warnock & Jacobson, Nashville, TN, for defendant.

### MEMORANDUM AND ORDER

BELOT, District Judge.

#### Introduction

▮ Plaintiff and defendant manufacture and sell Bibles. Plaintiff initiated this action, claiming that defendant's "Family Heirloom Bible" infringes upon plaintiff's common-law rights in the trademark "Heirloom Family Bible" in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] The parties agree that this court has subject matter jurisdiction over plaintiff's federal trademark claims. 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) (Docs. 1 and 11).[2] Plaintiff initially sought a preliminary injunction (Doc. 3). After an evidentiary hearing (Doc. 55), the parties agreed to submit the case by summary judgment. Accordingly, before the court are the following:

1. Defendant's motion for summary judgment (Docs. 34 and 35);

2. Plaintiff's response (Doc. 56);

3. Defendant's reply (Doc. 62);

4. Plaintiff's supplemental memorandum (Doc. 66); and

5. Defendant's supplemental memorandum (Doc. 67).[3]

The court has reviewed the parties' submissions, the transcript of the preliminary injunction hearing and is prepared to rule.

#### Summary Judgment Standards

▮ The parties are familiar with the standards pertaining to summary judgment. Summary judgment is disfavored in trademark cases. Nonetheless, summary judgment is appropriate where the party op-

---

1. "Heirloom Family Bible" is not a registered trademark. Registration is not a prerequisite to an action under § 43(a) of the Lanham Act. *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.,* 79 F.3d 258, 262 (2nd Cir.1996).

2. Plaintiff also has alleged a state law claim of unfair competition (Doc. 1, Count II). Defendant does not concede subject matter jurisdiction over the state claim (Doc. 11). However, neither party has made jurisdiction a summary judgment issue.

3. The court delayed its ruling pending the Tenth Circuit's decision in *Heartsprings, Inc. v. Heartspring, Inc.,* 143 F.3d 550 (1998). The court offered the parties an opportunity to file supplemental memoranda directed to the Tenth Circuit's decision.

posing the motion fails to demonstrate the existence of any material issue for trial. *Panavision Intern., L.P. v. Toeppen,* 945 F.Supp. 1296, 1301 (C.D.Cal.1996) (internal case citations and quotations omitted). Whether a term is generic may be determined by summary judgment, *Convenient Food Mart v. 6–Twelve Convenient Mart,* 690 F.Supp. 1457, 1461 (D.Md.1988), *aff'd,* 870 F.2d 654 (4th Cir.1989). Although the issue of likelihood of confusion generally is regarded as a factual one, it nevertheless is amendable to summary judgment in appropriate cases. *First Savings Bank, F.S.B. v. First Bank System,* 101 F.3d 645, 650 (10th Cir.1996).

### *The Parties' Contentions and Elements of Proof*

■ The party claiming ownership of a mark must show that the mark is entitled to protection. *Black & Decker Corp. v. Dunsford,* 944 F.Supp. 220, 224 (S.D.N.Y.1996). In order to show trademark infringement, a plaintiff has to prove: (1) that it has a protectable trademark; and (2) that defendant's use of the contested mark is likely to cause confusion. *Universal Motor Oils Company, Inc. v. Amoco Oil Company,* 809 F.Supp. 816, 819 (D.Kan.1992) (case citations omitted). Trademark protection falls into one of four categories or terms: (1) generic; (2) descriptive; (3) subjective or (4) arbitrary or fanciful. *First Savings Bank, F.S.B., supra,* at 654. Only the first category is of concern in this case.

■ Plaintiff asserts that the term "Heirloom Family Bible" is "at least descriptive, if not distinctive and [is] entitled to protection because [it has] become distinctive of plaintiff's goods in commerce." (Doc. 56 at 1, 14–15).[4] Defendant responds that the term "Heirloom Family Bible" is generic and not protectable (Doc. 34 at 12–15). *Id.* ("Generic term" is the weakest mark and cannot become a trademark under any circumstances). It is not necessary, however, for the court to determine whether plaintiff's mark is "at

least descriptive, if not distinctive." A descriptive term is protected only where a secondary meaning is shown. *Id.* at 654–55. *See also Educational Development Corp. v. Economy Co.,* 562 F.2d 26, 29 (10th Cir. 1977). Defendant has declined to move for summary judgment on grounds of lack of secondary meaning because it may raise factual issues. (Doc. 62 at 2, n. 1).

### *Undisputed and Disputed Facts*

The facts which defendant specifically cites to support its argument that "Heirloom Family Bible" is generic are as follows:

6. The "family record" pages in Nelson's Family Heirloom Bible—African–American Edition leave no doubt that it is intended as an heirloom. One page, entitled "Family Heritage," is specifically designed for recording "words of faith, hope, encouragement and love" for future generations. [Anderson Aff., Ex. 8]

7. That the Family Heirloom Bible—African–American Edition is quite literally intended as a "family heirloom" Bible is also apparent from Nelson's advertising, which calls the Bible "a high quality Bible for family devotional reading that will be treasured for generations." [Anderson Aff., Ex. 9]

8. Nelson's African–American Edition is not the first family Bible that Nelson has marketed as being a literal "heirloom." It markets its Family Reference Bible as having a "family register to record events for future generations." [Anderson Aff., Ex. 10] The packaging says "Beautiful 12 page register with pages for marriages, births, important events and family tree— *a cherished family heirloom.*" [Anderson Aff., Ex. 11 (emphasis added) ]

9. Similarly, Nelson markets its NAB [FN4] Holy Bible Family Bible as "crafted to last for generations." [Anderson Aff., Ex. 12]

---

4. In its memorandum, plaintiff also contends that the marks "Heirloom" and "Heirloom Bible Publishers" are not generic and are protectable as trademarks. (Doc. 56 at 14). No such claim is made in the complaint. Rather, the complaint mentions only the mark "Heirloom Family Bi-

ble." (Doc. 1). There is nothing in the record to indicate that the parties have agreed to expand the case to include "Heirloom" and "Heirloom Bible Publishers." The court finds that the latter two purported marks are not at issue in this case.

10. DeVore, like Nelson, intends for its family Bibles to become literal "heirlooms," and markets them as such. Ronald Leiker, plaintiff's Vice–President of Operations, who has had significant sales and marketing involvement, testified that family Bibles are traditionally used to pass family records on to future generations, that Plaintiff "absolutely" markets such Bibles as literal heirlooms, and that he believes that other companies do likewise. [Anderson Aff., Ex. 13]

11. Similarly, William Meitl, DeVore's General Manager, explained that the deluxe nature of the family Bible and the meaningful emotional content of the family record pages are the factors that "make[ ] it a true heirloom." [Anderson Aff., Ex. 14] Mr. Meitl further testified that plaintiff "[a]bsolutely" makes special efforts to communicate to customers that its Bible is particularly suited to be passed down from generation to generation. [Anderson Aff., Ex. 14, (pp 17:10–18:20) ]

\* \* \* \* \* \*

13. Family Bible publishers other than DeVore and Nelson also advertise that their family Bibles are suited to become family heirlooms. Turner Publishing even publishes "The Holy Bible: *Heirloom Edition*," which it calls "a unique family *heirloom* that will enlighten and inspire for generations." Similarly, in connection with its "Holy Bible," Turner says: "With more than thirty pages for listing family records, *the Holy Bible* is destined to be an *heirloom* for many generations." [Anderson Aff., Ex. 16 (underlining for emphasis added).]

14. World Bible Publishers has two family Bibles, which it advertises as intended to be "passed down through the generations" and "cherished for generations." [Anderson Aff., Ex. 17] Zondervan Publishers publishes two family Bibles as well, describing one as having "extensive features that will make it a treasured family *heirloom* " and the other as becoming a "cherished family keepsake." [Anderson Aff., Ex. 18 (emphasis added) ]

15. The National Baptist Publishing Board catalog likewise features a family bible advertised to "be a cherished heirloom." [Anderson Aff., Ex. 19]

\* \* \* \* \* \*

17. There have also been nearly two hundred federal trademark registrations containing the word "heirloom," more than sixty of which are active. [Anderson Aff. Ex. 21] None of these trademarks is analogous to "Heirloom Family Bible: in that none combines the word "heirloom" solely with the name of a good that is widely understood to be an heirloom. [*Id.*]

18. The Patent and Trademark Office (PTO) has repeatedly required that registrants "disclaim" the word "heirloom," or has accepted voluntary disclaimers, where the goods or services in question are heirloom-type goods, such as jewelry and furniture.[FN6] [*Id.*]

FN4. In the industry, "NAB" means "New American Bible," an English Version of the Catholic Bible approved by the Confraternity of Catholic Bishops.

FN6. The PTO may require a trademark applicant to disclaim an unregistrable component of a mark otherwise registrable. 15 U.S.C. § 1056(a). The purpose of a disclaimer is to show that the applicant is not making claim to exclusive appropriation of the disclaimed material. The PTO has not required disclaimer of the word "heirloom" in cases where the goods and services would not literally be used as heirlooms, such as costume jewelry and a lawn and garden hose.

[Anderson. Aff, Par. 23 and Ex. 21].

(Doc. 34 at 3–7).

Plaintiff does not controvert paragraph 10 but states "however when plaintiff uses the 'Heirloom' in its business, it does not use it as an adjective to describe a Bible. To the contrary, 'Heirloom' is used and recognized as the name of plaintiff's business. See additional facts 4, 5 and 6." Additional facts 4, 5 and particularly 6 speak to the question of secondary meaning, which is not involved in this motion.

Plaintiff converts paragraph 17 and 18, in part, as follows:

17. It is uncontroverted that there have been nearly two hundred registrations or

attempts to register federal trademarks that contain the word "heirloom." However it is not true that none of these trademarks combines the word "heirloom" solely with the name of a good that is widely understood to be an heirloom. In the addendum to this memorandum are photocopies of several of these registrations. Of particular note, Ref: 21 allowed simply the word "Heirloom" to be registered to describe "sterling silver flatware," which could be passed down as a keepsake; Ref: 38 allowed the word "Heirloom" to be registered to describe "silver-plated flat and hollow ware and cutlery"; Ref: 39 allowed the word "Heirloom" to be registered for "watches," which can be passed from one generation to the next; Ref: 40 allowed the word "Heirloom" to be registered to describe "jewelry ...," which is one of the types of goods that defendant uses as an example of an "heirloom" or keepsake [Defendant's statement of uncontroverted fact, No. 18.1; and Ref: 110 allowed the word "Heirloom" to be registered for "table crystal ..." and other similar products that can be passed to future generations. The trademark office did not require a disclaimer of the word "Heirloom" in connection with any of these applications. [FN1] Likewise, in Ref: 153, the trademark office allowed the trademark "Heirloom Christmas" to be registered for "Christmas tree ornaments," which can be keepsakes and passed to future generations. Although the trademark office required the registrant to disclaim the word "Christmas," it did not require a disclaimer of the word "Heirloom." [More examples are found at exhibit 8 of plaintiff's injunction reply brief.]

18. Controverted. As demonstrated above, the trademark office has often allowed registrants to use the word "Heirloom" for keepsake items without requiring a disclaimer. [See paragraph 17, above.]

FN1. There are instances where the trademark office has required a disclaimer of the word "heirloom," although there does not seem to be an identifiable pattern to indicate why certain registrants were required to provide a disclaimer and other registrants were not.

(Doc. 56 at 1–2).

### The "Primary Significance" Test

■ A generic term is a term used to describe the relevant type or class of goods. As the court explained in *Best Buy Warehouse v. Best Buy Co. Inc.*, 751 F.Supp. 824 (W.D.Mo.1989), *aff'd*, 920 F.2d 536 (8th Cir. 1990):

> The test for deciding whether a word is generic is one of buyer understanding: "What do the buyers understand by the word for whose use the parties are contending?" *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th Cir.1984). Any competent source, including dictionaries, newspapers, consumer surveys, advertisements, and other publications, may provide evidence of the public's understanding of the term at issue. *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed.Cir. 1985).

\* \* \* \* \* \*

"[I]f the components of a trade name are common descriptive terms, a combination of such terms retains that quality." *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 488 (7th Cir.1982); *In re Gould Paper Corp.*, 834 F.2d 1017, 1018 (Fed.Cir.1987).

In *Berner International Corp. v. Mars Sales Co.*, 987 F.2d 975 (3d Cir.1993), the district court ruled on summary judgment that the term "air door" was generic. The ruling was reversed. The court of appeals discussed the primary significance test in the context of a word combination or phrase which is contended to be a trademark:

> A distinction between "invented" words such as "aspirin" and new phrases such as "cash management account" is illogical. Combinations of old words to create new phrases can be just as specific product descriptive/nongeneric as new coined words. Moreover, when evaluating a phrase to determine whether it is generic, it must be examined as a whole. "Words which could not individually become a trademark may become one when taken

together." *Blinded Veterans*, 872 F.2d at 1041 (citation omitted). "The validity of a mark must be determined by looking at the mark as a whole. A composite mark should not be fragmented into its various pieces." *Id.* (quoting McCarthy § 11:10 at 458). Even the Court of Appeals for the Seventh Circuit has recognized that "[d]issecting marks often leads to error." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d at 934 [(7th Cir.1986)]. Just as the phrase "cash management account" was found to be non-generic by evaluating its meaning to the relevant consuming public, *see In re Merrill Lynch, Pierce, Fenner, and Smith*, 828 F.2d 1567, 1571 (Fed.Cir.1987), so too should "air door" be evaluated by examining its meaning to the relevant consuming public. Even though the term "air door" may be the combination of two commonly used words, it is a phrase that has some measure of inherent incongruity; a door is usually understood as being solid while air is not. **It is the relevant consumers, not the courts, who determine whether the term signifies the genus of "air barriers."**

The alternative to a test which focuses on consumer understanding is one based on the understanding either of judges or of the non-consuming public. But "[i]n determining whether a claimed trademark is generic or descriptive at the time of adoption, its meaning to a non-purchasing segment of the population is not important. **The critical question is whether the mark is descriptive to the prospective purchasers of the product.**" *Blisscraft v. United Plastics Co.*, 294 F.2d 694, 699 (2d Cir.1961).

Finally, even were some distinction between invented words and invented phrases meaningful, limiting application of the primary significance test would contravene the purposes of trademark protection. Trademark protection is desirable because of the efficiencies and incentives produced by symbolic affiliation of producer and quality product. **This principle relies in all cases upon a mark's meaning to consumers.** It is their affiliation of producer and product that will affect purchasing decisions. *See* McCarthy, § 2.1 at 44–49;

Ralph H. Folsom & Larry L. Teply, *Trademarked Generic Words,* 89 Yale L.J. 1323, 1347 (1980). Regardless of whether a mark is an invented word or a developed phrase, "trademark protection benefits consumers by enabling them to select products on the basis of their origin … [which] encourages sellers to create and maintain good will by marketing products of reliable quality that consumers associate with their mark." *American Cyanamid v. Connaught Labs., Inc.,* 800 F.2d 306, 308 (2d Cir.1986).

In order to accommodate Congress' goals of promoting market efficiency and consumer understanding through trademark protection, the primary significance test must be utilized to determine a term's genericness. **Only if a term's meaning to the relevant consuming public is discovered can regulation of that term properly influence purchasing decisions and comport with relevant precedent.**

*Id.* at 981–82 (emphasis supplied).

In *Blinded Vet. Ass'n v. Blinded Am. Vet. Foundation* 872 F.2d 1035 (D.C.Cir.1989), the district court, after a trial, determined that the term "blinded veterans" was not generic, but rather a descriptive term entitled to trademark protection. The court of appeals reversed. The opinion is noteworthy because its author is Ruth Bader Ginsburg, now a justice of the United States Supreme Court. She wrote:

Because "blinded veterans" is not a registered trademark, the burden was on BVA to prove that the term is not generic. *See id.; Reese Publishing Co. v. Hampton Int'l Communications, Inc.,* 620 F.2d 7, 11 (2d Cir.1980); MCCARTHY § 12:2 at 528. BVA failed to shoulder that load. Indeed, BVA's own witnesses and exhibits effectively demonstrated the genericness of "blinded veterans," for they employed the term repeatedly to denote formerly sighted former warriors. *E.g.,* J.A. at 75–76, 189–90, 337–38; *see Reese Publishing,* 620 F.2d at 11–12 (such usage is probative of genericness); MCCARTHY § 12:2 at 529 & n. 12 (same). The district court itself, we note, used the term generically. *E.g.,* [*Blinded Veterans Ass'n v. Blinded Ameri-*

can Veterans Found.,] 680 F.Supp. [442] at 444 [(D.D.C.1988)] (observing the BAVF's founders "are themselves blinded veterans" and reporting that BAVF mailed recorded readings of the Constitution to "17,-500 blinded veterans").

A term need not be the sole designation of an article in order to be generic, see MCCARTHY § 12:2 at 525–26; **the test for genericness is whether the public perceives the term primarily as the designation of the article,** see id. § 12:2 at 522–23. "Blinded veterans" appears to fit that test. It is difficult to imagine another term of reasonable conciseness and clarity by which the public refers to former members of the armed forces who have lost their vision. Courts have found generic other terms that seem less distinctly apt denotations of their respective articles. See, e.g., National Conf. of Bar Examiners, 692 F.2d at 488 ("Multistate Bar Examination" as denoting "test prepared for determining the competency of applicants to the bars of several states"); Abercrombie & Fitch [v. Hunting World], 537 F.2d [4] at 11–12 [(2nd Cir.1976)] ("Safari" as denoting particular types of khaki-colored apparel); Dresser Indus., Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457, 462–63 (3d Cir.[1968]) ("Roots" as denoting rotary positive displacement lobe-type vacuum pumps), cert. denied, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968).

Just as "blinded" would be generic when used with "the blinded persons association," or "veterans" with "the veterans association," 680 F.Supp. at 445, so "blinded veterans" is generic when used to refer to once-sighted persons who served in the armed forces. Separately or together, the terms denote particular types of individuals; "blinded veterans" simply designates the twice-circumscribed category of people who are both blinded and veterans. We conclude, then, that the district court lacked justification for declaring "blinded veterans" descriptive rather than generic. We therefore do not address under a trademark rubric whether BVA proved

that the term has acquired secondary meaning. But cf. infra 1046 & nn. 22, 24. Id. at 1041–42 (footnotes omitted) (emphasis supplied).

No useful purpose will be served by citing additional cases. There are dozens of cases on the topic of genericness. Some are easy to read and understand. Others are not. See and compare, for example, the cases collected in 1 Jerome Gilson, Trademark Protection and Practice § 2.02 (1997). No case would appear to have direct application to this case.

### Analysis

 The word Bible, when capitalized, is clearly generic.[5] Webster's Ninth New Collegiate Dictionary defines Bible as "the sacred scriptures of Christians comprising the Old Testament and the New Testament" and "a copy or an edition of the Bible." The addition of the word family does not alter the generic quality of the term. Webster's defines "family Bible" as: "a large Bible usually having special pages for recording births, marriages and deaths." Public consumers of a "family Bible" could have no other possible understanding. Webster's defines "heirloom" as "any treasured possession handed down from generation to generation." No one would argue that "heirloom," considered alone, is anything other than generic. Not surprisingly, Webster's does not define "heirloom family Bible," nor does any other dictionary, as far as the court knows. Thus, the issue narrows to whether the three generic words, in the combination "Heirloom Family Bible," is still generic.

The court finds that there is insufficient evidence in the record from which the court can determine whether "Heirloom Family Bible" is generic. This is because neither plaintiff nor defendant has focused on the "primary significance" test. The facts recited, supra, have little, if any, relevance or materiality to, in Justice Ginsberg's words, "whether the public perceives the term primarily as the designation of the article." Plaintiff's and defendant's actions, intentions and statements regarding their own and each

---

**5.** Capitalization is crucial because use of the lowercase bible can mean an authoritative book on any subject. See, for example, Hemmings Motor News, " 'The bible' of the collector-car hobby since 1954."

other's Bibles do not equate to the public's perception of "Heirloom Family Bible."

This is so even if the court looks at facts outside of those specifically delineated as pertaining to the issue of validity. The few facts which might be construed to reflect public perception relate to the totally separate issue of confusion (Doc. 56 at ¶¶ 23, 38). The court does not reach the issue of confusion until it has been determined that the mark is protectable.

In the alternative, defendant contends that even if it is assumed that "Heirloom Family Bible" is protectable, summary judgment is nevertheless appropriate. Defendant asserts that there is no reasonable chance of confusion between plaintiff's "Heirloom Family Bible" and defendant's "Family Heirloom Bible—African–American Edition." (Doc. 35 at 15–25). Plaintiff responds that there *is* a substantial likelihood of confusion.

The court is more than satisfied that disputes of material fact preclude summary judgment on defendant's alternative theory.

*Conclusion*

Summary judgment is denied because there are no facts, disputed or otherwise, in the parties' motions upon which the court can decide whether "Heirloom Family Bible" is generic. This is because the record is insufficient to permit utilization of the "primary significance" test. The court is skeptical that any set of facts can be developed which will allow for summary judgment on the issue of validity, much less the issue of confusion. In all likelihood, a trial will be necessary.

The court reiterates its firm belief that this case can be, and should be, settled. A status conference will be held on June 8, 1998 at 1:00 p.m. to discuss settlement and other issues. Representatives of the parties are to be present along with counsel.

Defendant's motion for summary judgment (Docs. 34 and 25) is denied.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 5 pages and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (1992). The response to any motion for re-

consideration shall not exceed 5 pages. No reply shall be filed.

IT IS SO ORDERED.