PUBLISH

**UNITED STATES COURT OF APPEALS**

**Filed 11/27/96**

**TENTH CIRCUIT**

---

FIRST SAVINGS BANK, F.S.B.,

　　　　Plaintiff - Appellant,

v.

FIRST BANK SYSTEM, INC.; FIRST
BANK, F.S.B.,

　　　　Defendants - Appellees.

Nos. 95-3246
and 95-3331

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 95-CV-4020)**

---

John M. Collins (Thomas H. Van Hoozer with him on the briefs) of Hovey, Williams, Timmons & Collins, Kansas City, Missouri, for Plaintiff-Appellant.

Peter M. Lancaster (Ronald J. Brown and Elizabeth C. Buckingham with him on the brief) of Dorsey & Whitney, P.L.L.P., Minneapolis, Minnesota, for Defendants-Appellees.

---

Before ANDERSON, McWILLIAMS, and ENGEL[*], Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

　　　[*]Honorable Albert J. Engel, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

This case involves a service mark dispute between two banks competing in east-central Kansas. First Savings Bank, F.S.B., ("First Savings") sued First Bank System, Inc., and its member institution, First Bank, F.S.B., for service mark infringement, unfair competition, and false designation of origin under the Lanham Act and Kansas state and common law. Specifically, First Savings sought to prevent the defendants from using within a local trade territory FIRST BANK, FIRST BANK KANSAS, FIRST BANK SYSTEM or any other mark confusingly similar to its own FirstBank mark. Among other things, the defendants raised First Bank System's 1971 federal registration of "First Bank System" and design as a defense to the action, claiming that the registration prevented First Savings from ever acquiring superior rights in FirstBank.

After hearing cross-motions for summary judgment, the district court granted summary judgment in favor of the defendants, concluding (1) that First Bank System's 1971 federal registration put First Savings on constructive notice that it could not adopt any confusingly similar mark, and (2) that FirstBank was, in fact, confusingly similar to the 1971 federal registration. First Savings Bank, F.S.B. v. First Bank System, Inc., 902 F. Supp. 1366 (D. Kan. 1995). First Savings appeals from that judgment, as well as from three separate orders of the district court relating to a discovery dispute.

We hold that the district court employed the wrong legal analysis when passing upon First Bank System's motion for summary judgment. Upon applying the proper

analysis to the record created by the parties, we reverse the grant of summary judgment, and further hold that a reasonable jury could not conclude that the FirstBank mark is confusingly similar to the 1971 federal registration "First Bank System" and design. Therefore, the 1971 registration cannot serve as a defense in this case. We remand for further proceedings on the remaining issues.

## BACKGROUND

### A. The Service Marks

#### 1. First Savings' "FirstBank" Mark

The plaintiff-appellant, First Savings, is a federally chartered savings bank based in Manhattan, Kansas, with branch offices in Junction City and Lawrence, Kansas. First Savings was originally chartered in 1887 as the First National Bank of Manhattan. From 1887 to 1983, it was known in the region primarily as "First National Bank."

In 1983, First Savings adopted a new marketing name and logo. The mark consists of "FirstBank" next to a number one that appears in motion (the "walking one"). First Savings prominently advertised the change as a "new name, a new logo, a new look." J.A. Vol. III at 867.

First Savings became a federal savings bank in 1986 and changed its legal name from the First National Bank of Manhattan to the current First Savings Bank, F.S.B., but it retained FirstBank as its marketing name. That same year, with plans to expand into

Lawrence, Kansas, First Savings discovered that a bank in Lawrence already held a state registration for FIRST BANK. First Savings purchased the service mark rights of the Lawrence bank, and took assignment of the state registration, which it still holds. Id. at 881.

As a result, from 1983 to the present, First Savings has used the FirstBank mark without interruption in connection with its banking services, and now claims exclusive rights to the mark within a five-county trade territory.[2] On bank signs, advertisements, documents, etc., the mark appears as follows:



_____

[2]The territory encompasses the Kansas counties of Douglas, Geary, Marshall, Pottawatomie, and Riley.

See Id. at 877. This is the most prominent mark used by First Savings. However, First Savings does not have a federal registration for the mark, and apparently has never attempted to obtain one.

**2.      The First Bank System Marks**

The defendant-appellee, First Bank System, Inc., is a large, interstate financial holding company headquartered in Minneapolis, Minnesota, with branch banks scattered across the nation. Because it is a holding company with many diverse member institutions, First Bank System has used, and still uses, many different marks. Of these many marks, the most important to this appeal is First Bank System's 1971 federal registration of "First Bank System" and design. As amended in 1972, the federal registration appears as follows:



Id. at 997. Historically, First Bank System's member banks used this registered mark to show their affiliation with the larger organization. For instance, the First State Bank of Saint Paul, one of First Bank System's flagship banks, would commonly include the

registered mark on advertisements or documents, along with its own individual name. See, e.g., J.A. Vol. II at 580. The 1971 registered mark also appeared on the documents and advertisements of First Bank System divisions that did not provide branch banking, such as FBS Mortgage and FBS Financial.

In 1979, First Bank System apparently decided that the mark contained in the 1971 registration no longer served its purpose. It quit using the registered mark altogether, and adopted a new marketing plan and new graphic standards for its member banks. Under the new plan Member banks show their affiliation with First Bank System by using a new composite mark consisting of the "first mark" and a "logotype." J.A. Vol. VI at 2062. The first mark is a symbol drawn by five solid strokes, with the middle stroke forming the number one.[3] The logotype is the words FIRST BANK (or FIRST BANKS). For example, according to the graphic standards, the First State Bank of Saint Paul would now advertise by prominent and primary use of the first mark, and the words FIRST BANK SAINT PAUL or, at times, FIRST BANK per se. The legal name, First State Bank of Saint Paul, would appear, if at all, only in much smaller print. On advertisements or bank documents, the words "Member First Bank System" would also likely appear in small print. The apparent goal of these graphic standards is to have consumers refer to the bank as FIRST BANK, rather than as the First State Bank of Saint Paul. It was

---

[3]Apparently, the five strokes originally represented the five states First Bank System primarily served at the time it adopted the mark: Minnesota, Wisconsin, South Dakota, North Dakota, and Montana.

thought that by having each member bank make a similar, prominent use of the octagonal first mark and FIRST BANK logotype, a common nationwide identity would be created in First Bank System even though the member banks have disparate legal names.

The shelved 1971 registration expired in 1991. In 1989, First Bank System obtained a federal registration for FIRST BANK SYSTEM in a normal left-to-right, block letter configuration without any design. In 1990, First Bank System federally registered a composite mark consisting of the octagonal first mark and the words MEMBER FIRST BANK SYSTEM. First Bank System has not claimed to hold, and the record does not reveal, any federal registration for FIRST BANK per se.

### 3.      The Dispute in East-Central Kansas

Friction between First Savings and First Bank System began when First Bank System acquired branch banks in east-central Kansas. In January, 1995, First Bank System merged with Metropolitan Federal Bank ("Metropolitan"), a holding company that owned savings banks in many states, including Kansas. One Metropolitan branch was located approximately a block away from First Savings' Manhattan location. First Bank System changed the legal name of nearly all the former Metropolitan branches, including those in Kansas, to "First Bank, F.S.B." In order to achieve consistency with the marketing plan and graphic standards previously mentioned, First Bank System also

decided to use FIRST BANK as the marketing name for former Metropolitan branches in most locations.

First Bank System did something slightly different, however, with respect to the marketing name in Kansas. There, First Bank System decided to use FIRST BANK KANSAS as the marketing name for the former Metropolitan branches, rather than FIRST BANK per se.[4] First Bank System has represented that it will use FIRST BANK KANSAS on exterior bank signs and in communications to prospective customers, but will use FIRST BANK per se for communications to existing customers, so that it can benefit from a nationwide standardization of bank forms and mass communications. Appellee's Br. at 2 n.1. Thus, as it relates to this appeal, the practical result of First Bank System's merger with Metropolitan was that its branch bank in downtown Manhattan, Kansas, would soon have exterior signs and advertisements bearing FIRST BANK KANSAS (and probably the octagonal first mark), while the First Savings branch a block away has signs and advertisements bearing FirstBank.

First Savings immediately sued First Bank System, Inc., and the new First Bank, F.S.B., seeking to enjoin First Bank System from using within the territory FIRST BANK, FIRST BANK KANSAS, FIRST BANK SYSTEM or any other mark

---

[4]First Bank System apparently decided to use geographic indicators in Nebraska and Iowa as well; hence, the marketing names FIRST BANK NEBRASKA and FIRST BANK IOWA.

confusingly similar to FirstBank.[5]  As mentioned, First Bank System claimed, as a defense, that the 1971 registration provided nationwide constructive notice to all persons that no party could adopt a mark confusingly similar to the registration without First Bank System's permission.  Thus, First Bank System argued, First Savings never had the right to adopt the FirstBank mark in 1983 because it was confusingly similar to the 1971 registration.

In reply, First Savings argued that the FirstBank mark was not confusingly similar to the registration, and, in any event, that First Bank System had abandoned the registration in 1979.  First Savings also argued that First Bank System had made a false representation to the Patent and Trademark Office ("PTO") when it originally obtained the 1971 registration because it had failed to tell the PTO that another institution, SeaFirst Bank, had superior rights in Kansas at that time to the use of FIRST BANK.

The district court granted summary judgment in First Bank System's favor on the basis of the constructive notice defense.  The district court did not decide whether First Bank System had any statutory or common law rights in any other marks within the trade territory.[6]

---

[5]Because of the unity of interest between First Bank System, Inc., and its member First Bank, F.S.B., we refer to them collectively hereinafter as "First Bank System.'"

[6]Following summary judgment, First Bank System actually began using FIRST BANK KANSAS in the trade territory.  See First Savings Bank, F.S.B. v. First Bank System, Inc., 163 F.R.D. 612, 616 (D. Kan. 1995) (order denying First Savings' request to restore the injunction pending outcome of this appeal).

**B.      The Discovery Dispute**

Prior to summary judgment, a discovery dispute erupted that resulted in three orders of the district court that First Savings also appeals.  Document production was to occur in this case no later than March 2, 1995.  Each party produced documents on March 3, 1995.  Three days later, First Savings produced its withheld-documents list, see Fed. R. Civ. P. 26(b)(5), but First Bank System did not produce its own list (the "list") until March 16, 1995, one day after First Savings filed a motion to compel production of the withheld documents.  The magistrate judge found First Bank System's list untimely and inadequate, and ruled that First Bank System had thereby waived its attorney-client privilege and work product protection with respect to the withheld documents.

First Bank System sought review of the magistrate judge's order before the district court.  The district court set aside the magistrate judge's order, finding, among other things, that First Bank System had not acted in bad faith with respect to the list; that the burdens created by the expedited schedule and First Bank System's prompt efforts to cure its error mitigated its failure to produce a timely list; that First Savings itself had violated "the spirit, if not the literal terms" of the local rule requiring a party to confer with opposing counsel before bringing a motion to compel; and that the prejudice the waiver would cause to First Bank System outweighed any prejudice suffered by First Savings in not receiving a timely list.  J.A. Vol. VII at 2243-69.  The district court ordered the parties to confer over which documents on the list should be produced.

In the meantime, First Bank System moved for summary judgment. First Savings then filed a Fed. R. Civ. P. 56(f) motion, urging the district court to delay summary judgment until First Savings had obtained documents on the disputed list. The district court denied the motion on the grounds that the required affidavit was insufficient, and granted summary judgment in favor of First Bank System. Shortly thereafter, the district court also denied First Savings' motion to supplement the record on appeal with documentation of its attempts to resolve the issue of the withheld-documents list with counsel for First Bank System in the days leading up to summary judgment. First Savings appeals (1) the order setting aside the magistrate judge's order; (2) the denial of its 56(f) motion; and (3) the denial of its motion to supplement the record.

## DISCUSSION

**A.      Standard of Review**

We review the grant of summary judgment de novo, using the same standard applied by the district court. Universal Money Ctrs., Inc. v. American Tel. & Tel. Co., 22 F.3d 1527, 1529 (10th Cir. 1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An

issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. Universal Money, 22 F.3d at 1529.

"Though likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases." Universal Money, 22 F.3d at 1530 n.2 (quoting Warner Bros. v. American Broad. Cos., 720 F.2d 231, 246 (2d Cir. 1983)). "[C]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source." Id.

## B. The Service Marks

First Bank System prevailed in the district court by defensive use of a federal service mark registration. Federal registration is a creature of the Lanham Act of 1946, which provides national protection for trade and service marks used in interstate and foreign commerce. See 15 U.S.C. §§ 1051-1127 )1963 & Supp. 1996); Park'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 193 (1985).[7] Congress considered nationwide protection of marks desirable because of the uncertain, piecemeal protection afforded by

---

[7]A service mark is a word, name, symbol, device, or any combination thereof used "to identify and distinguish the services of one person, including a unique service, from the services of others, and to indicate the source of the services." 15 U.S.C. § 1127. The Lanham Act generally applies the same to both trade and service marks. Park'N Fly, 469 U.S. at 191 n.1.

state and common law. Park'N Fly, 469 U.S. at 193. Therefore, federally registered marks receive nationwide protection regardless of the area in which the registrant actually used the mark, because registration constitutes nationwide constructive notice to competing users. 15 U.S.C. § 1072 (1963); Armand's Subway, Inc. v. Doctor's Assocs., Inc., 604 F.2d 849, 849 (4th Cir. 1979).

A federally registered mark is superior to any confusingly similar mark subsequently adopted anywhere in the United States. 4A Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 25.04 (4th ed. 1994); Mister Donut of Am., Inc. v. Mr. Donut, Inc., 418 F.2d 838, 844 (9th Cir. 1969). The unauthorized use of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in a way that is likely to cause confusion in the marketplace concerning the source of the different products constitutes trademark infringement. 15 U.S.C. § 1114(1)(a) (1963); Universal Money, 22 F.3d at 1529.

The wide benefits provided by federal registration are justified by the order they bring to the market place. Weiner King, Inc. v. Wiener King Corp., 615 F.2d 512, 523-24 (C.C.P.A. 1980). Nationwide trademark protection fosters competition and product quality by securing to the producer the benefits of good reputation. Park'N Fly, 469 U.S. at 198. It benefits the consumer by preventing confusion about the source of products, and by instilling in consumers "the confidence that inferior goods are not being passed off by use of a familiar trademark." Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760

-13-

F.2d 1383, 1395 (3d Cir. 1985). Federal registration also protects other entrepreneurs, who "should be able to rely on a search of the trademark registry and their own knowledge of whether the mark has been used so that what may be substantial expenditures of money promoting the mark will not be wasted." Id.

Although First Bank System has used, and still uses, many different service marks, we are concerned in this appeal with the mark registered in 1971. The 1971 registration is the only registration alleged by First Bank System to have provided constructive notice to First Savings in 1983, and the district court based its judgment on a likelihood of confusion between the 1971 registration and the FirstBank mark, not between the FirstBank mark and any other service mark potentially involved in this case. Of course, First Bank System may yet be able to prove that it has gained rights, through prior use within the trade territory, to some other marks--such as FIRST BANK SYSTEM per se or even FIRST BANK per se--but the district court has never made any determination on this point. Therefore, in reviewing the judgment, we compare FirstBank to the entire 1971 mark as registered.[8]

_____

[8]In Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1106 (6th Cir. 1991), the court carefully explained how confusion regarding the precise marks to be compared can lead to error. There, the district court had assumed as a matter of logic that ownership in a mark consisting of the initials HMS alone also granted to the plaintiff ownership in a mark consisting of the same initials with a roof design. The court of appeals stated:

(continued...)

-14-

Initially, we note that First Bank System's 1971 registration expired in 1991, and First Bank System did not merge with Metropolitan until 1995. The district court never determined whether First Bank System had extended its business into the five-county trade territory prior to the registration's expiration. Ordinarily, constructive notice terminates with the registration on which it is based, 4A Rudolf Callmann, <u>The Law of Unfair Competition, Trademarks and Monopolies</u> § 25.04, at 26 (4th ed. 1994), and it would be difficult for First Bank System to rely upon the 1971 registration without first proving that it expanded into the trade territory prior to expiration. Here, however, the district court extended the constructive notice by finding FirstBank confusingly similar to the 1971 registration and then by tacking the 1971 registration to First Bank System's 1989 registration. First Savings questions the decision to tack the two registrations, but

[8](...continued)
Homeowners argues that since it has ownership of a mark consisting of the initials HMS, such ownership extends to other marks containing those initials along with other words or designs. This is the argument accepted by the District Court without proper analysis. Homeowners cannot make out an infringement case against [Defendant] by showing ownership of one mark (the initials HMS alone) and a likelihood of confusion based on a comparison between a different mark (the HMS-roof design mark) and [Defendant's] mark.

<u>Id.</u> Similarly, here, First Bank System cannot make out its constructive notice defense by showing registration of the 1971 mark, but then a likelihood of confusion between a different mark (FIRST BANK or FIRST BANK SYSTEM per se) and First Savings' mark.

we need not reach this issue.  Tacking is only relevant if FirstBank was confusingly similar to the 1971 registration in the first place.  We hold it was not.

As proponent of the constructive notice defense, First Bank System bears the burden of proving a likelihood of confusion.  Universal Money, 22 F.3d at 1530.  When determining whether there is a likelihood of confusion between two marks, we consider the following factors:  (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (d) the degree of care likely to be exercised by purchasers; (e) evidence of actual confusion; and (f) the strength or weakness of the marks.  Id.  All of these factors are interrelated and no one factor is dispositive.  Id.  In light of these factors, the ultimate question is whether First Savings' adoption of the FirstBank mark was likely to cause consumers to believe there is an affiliation between First Savings and First Bank System.  See id.

The district court opinion does not reflect a full consideration or discussion of the appropriate factors.  Instead, the district court relied on two connected, but insufficient conclusions.  First, it determined that the appearance and pronunciation of the marks were similar.  Second, the court reasoned that if it accepted First Savings' argument that FIRST

BANK KANSAS is confusingly similar to FirstBank, then FirstBank must itself be

confusingly similar to FIRST BANK SYSTEM.[9]

The first conclusion reflects, at most, a consideration of the first <u>Universal Money</u>

factor. This is not enough, and borders upon little more than a side-by-side comparison of

the marks. <u>See</u> <u>Universal Money</u>, 22 F.3d at 1531 (courts must not engage in a "side-by-

side" comparison); <u>Beer Nuts, Inc. v. Clover Club Foods Co.</u>, 711 F.2d 934, 941 (10th

Cir. 1983) (same). The second conclusion perpetuates the error of the first by again

assuming that visual or verbal similarity is itself the dispositive factor. Considering that

literally hundreds of banks use the words FIRST and BANK in their marketing names, it

is certainly possible that FirstBank could be confusingly similar to FIRST BANK

KANSAS, but not to "First Bank System" and design. Accordingly, we apply the

appropriate factors de novo in order to determine whether First Bank System is entitled to

a favorable summary judgment on the likelihood of confusion between the FirstBank

---

[9]The district court also apparently relied on the decision in an Iowa case refusing to enjoin First Bank System's use of FIRST BANK or FIRST BANK IOWA within a local Iowa trade territory. <u>See</u> <u>First Bank v. First Bank System, Inc.</u>, 909 F. Supp. 657 (S.D. Iowa 1995), <u>aff'd</u>, 84 F.3d 1040 (8th Cir. 1996). The Iowa case involved materially different facts and was decided on a different legal basis, and cannot support the decision in this case. The court of appeals in the Iowa case specifically stated that it "need not determine whether FIRST BANK and FIRST BANK SYSTEM or FIRST BANK IOWA are similar enough to create a likelihood of confusion among customers." 84 F.3d at 1047 n.9.

The parties have supplemented the record with a slip opinion in the Iowa case, in which the district court dismissed the local bank's damages claims for substantially the same reasons it denied injunctive relief. <u>See</u> <u>First Bank v. First Bank System, Inc.</u>, No. 4-95-CV-80021 (D. Iowa Nov. 15, 1996). This opinion also does not affect our disposition.

mark and the 1971 registration.  We discuss the factors in a rough order of their importance to this case.

### 1.    Similarity of the Marks

The degree of similarity is tested on three levels as encountered in the marketplace: sight, sound, and meaning.  <u>Universal Money</u>, 22 F.3d at 1530-31.  Contrary to the district court, we find that a reasonable jury could only conclude that the similarity between FirstBank and the 1971 registration is minimal.  The 1971 registration is written in a fancy script and the words are vertically stacked.  The words appear against a distinct, black television background.  FirstBank, on the other hand, is arranged left-to-right.  The words are pushed together and are accompanied by the distinctive walking-one logo.  The visual differences are apparent.[10]  As to pronunciation, "First Bank System" contains an additional word, and to that extent is pronounced differently than FirstBank.

As to meaning, the FirstBank mark conveys a different and more focused impression than the 1971 registration.  Indeed, at least one reason First Bank System quit

---

[10]The district court characterized the black television background of the 1971 registration as an insignificant "field or carrier," and gave this design aspect very little weight, if any.  We find the background design more significant.  It has a distinct visual impact and appears to be the reason the words are vertically stacked.  Indeed, when the PTO forced First Bank System to distinguish its 1971 mark from that of a third party's existing registration, First Bank System relied in part upon the fact that the words "First Bank System" are "positioned in solid field." J.A. Vol. VII at 2361.  In any event, regardless of the background's impact in the abstract, when compared with the FirstBank mark, it is quite distinguishable.

using the registered mark in 1979 was because it believed the mark did not convey a strong enough impression.  At her deposition, Mary Ann Hansen, a former First Bank System advertising executive, compared the 1971 registration with First Bank System's newer graphic standards.  She testified, "Member First Bank System was thought to be weak.  The word "system" was kind of nebulous and it was too complicated.  If you look at it type [sic] graphically, that first mark is stronger visually."  J.A. Vol IV at 1321 (emphasis added).  We agree with Ms. Hansen.

First Bank System, however, argues that the term FIRST BANK is the dominant portion of the 1971 registration, and that this dominant portion is very similar to FirstBank in appearance and identical in pronunciation.  While the dominant portion is given greater weight, each mark still must be considered as a whole.  Universal Money, 22 F.3d at 1531; Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n, 651 F.2d 311, 317-18 (5th Cir. 1981) (similarity of appearance is determined "on the basis of the total effect of the designation, rather than on a comparison of individual features" (quoting Restatement of Torts § 729, cmt. b (1938))).  Therefore, in Universal Money, even though both parties' bank cards used the dominant term UNIVERSAL, this court concluded that when the entire marks and attending logos were compared, the differences outweighed the similarities.  The same applies here, particularly when the strength of the mark is considered.

## 2. The Strength of the Mark

This factor is highly instructive in this case. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." Champions Golf Club, Inc. v. The Champions Golf Club, 78 F.3d 1111, 1117 (6th Cir. 1996). "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." Universal Money, 22 F.3d at 1533 (quoting Exxon Corp. v. Texas Motor Exch., 628 F.2d 500, 504 (5th Cir. 1980)). The greater the number of identical or more or less similar marks already in use on different kinds of goods, the less is the likelihood of confusion between any two specific uses of the weak mark. Id.; Homeowners, 931 F.2d at 1108.

In Universal Money, the plaintiff ("UMC") held four registered trademarks, each incorporating the word UNIVERSAL: UNIVERSAL MONEY CARD; UNIVERSAL MONEY CENTER; UNIVERSAL MONEY and design; and UNIVERSAL MONEY. In seeking to enjoin the use of "AT & T Universal Card" for AT & T's combination telephone and credit card, UMC naturally claimed that UNIVERSAL was the dominant term in its federal registrations. We cited with approval the following analysis of the district court regarding the strength of this "dominant" term:

> [T]he evidence produced by AT & T and uncontroverted by UMC indicates that the term "Universal" is widely used by parties other than UMC. In particular, the term is in use by approximately six financial institutions throughout the country who have used the term on their own ATM cards. The term is also in use by two credit card companies ("Universal Gold Card" and "Universal Premiere Card") . . . . Further, Dun & Bradstreet

-20-

shows over 200 active businesses employing the term. In short, the term is used by a significant number of entities and is thus a relatively weak mark.

Universal Money, 22 F.3d at 1533-34. Thus, we recognized the well-established principle that extensive third-party use of the disputed term indicates that the term itself deserves only weak protection. See Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1182 (11th Cir. 1985) (where consideration of third-party usage contributed to finding that FREEDOM was weakly protected); Sun Banks, 651 F.2d at 316 (where extensive third-party use of SUN was impressive evidence that there would be no likelihood of confusion between Sun Banks and Sun Federal). Specifically, third-party registrations are "relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11.27[2][b] (3d ed. 1995).

As noted, First Bank System argues that the term FIRST BANK constitutes the dominant segment of the 1971 registration. The record contains evidence of extensive third-party use of the terms FIRST, BANK, and FIRST BANK. First Savings' search of the federal registry revealed registrations for "FIRSTBANK CARD"; "FIRST BANK AND TRUST COMPANY"; "THE FIRST BANKERS"; "BANCFIRST"; "CALIFORNIA FIRST BANK"; and "FIRST BANK OF SAN LUIS OBISPO." Each of these marks were registered in 1983 or earlier. Many more registrations exist with FIRST and BANK separated by only one word, such as "FIRST CITY BANK" or "FIRST

-21-

PROFESSIONAL BANK." Furthermore, First Savings produced applications to the PTO by other financial institutions seeking registration of FIRST BANK per se, and claiming first use in commerce well before 1983. These registrations and applications provide compelling evidence of what most consumers would recognize from experience; namely, that banks are wont to refer to themselves as the "First."[11] This extensive use suggests that FIRST BANK per se is a weak term, at least when applied to the provision of financial services.

The term's category fully supports this conclusion. A term for which trademark protection is claimed will fall into one of four categories: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. Champions Golf, 78 F.3d at 1116-17. A generic term is a term used to describe the relevant type or class of goods. It is the weakest mark and cannot become a trademark under any circumstances. Id. at 1117. A descriptive term describes a characteristic of a product or service, and is protected only where secondary meaning is shown. Id. Examples of descriptive terms include BEST, SUPERIOR, or PREFERRED. Id. (citing J. Thomas McCarthy, McCarthy's Desk Encyclopedia of Intellectual Property 93 (1991)). The third, and stronger, mark is the suggestive mark, which suggests rather than describes a characteristic of the product and requires the

---

[11]This practice appears to date back at least to 1863, when Salman P. Chase, then Secretary of the Treasury, announced that all national banks would include their numerical order of charter. See Bastrop Nat'l Bank v. First Nat'l Bank of Bastrop, 222 U.S.P.Q. 524, 528 n.9 (W.D. La. 1983).

consumer to use imagination and perception to determine the product's nature. Id. Finally, the arbitrary or fanciful mark is the strongest mark. An arbitrary mark has a common meaning unrelated to the product for which it has been assigned, such as APPLE when applied to computers, while a fanciful mark, such as KODAK or EXXON, signifies nothing but the product. Id.

BANK is clearly generic and incapable of protection. We consider FIRST BANK weakly descriptive. FIRST BANK is not susceptible to a wealth of meaning. See First Nat'l Bank & Trust Co. v. First Nationwide Bank, 15 U.S.P.Q.2d 1457, 1461 (W.D. Mo. 1990) (finding FIRST NATIONAL BANK per se too common to warrant protection). FIRST BANK describes a bank first in time or quality. When applied to banks that were not first in charter, the term is really trade puffery. See Best Buy Warehouse v. Best Buy Co., 751 F. Supp. 824, 826 (W.D. Mo. 1989) (refusing to protect BEST BUY as applied to retail stores, noting the term is "sales puffing"), aff'd, 920 F.2d 536 (8th Cir. 1990). At least as applied to banking services, we consider it highly doubtful that the PTO would register FIRST BANK unaccompanied by any other words or design. Cf. First Nationwide Bank, 15 U.S.P.Q.2d at 1461 (finding that the PTO has determined FIRST NATIONAL BANK per se is not registerable). Furthermore, First Bank System itself has claimed in the district court, and on appeal, that the term FIRST BANK is only

descriptive. Appellee's Br. at 14 n.6 (arguing that FIRST BANK is "a descriptive mark in a crowded field").[12]

Thus, the primary segment of the 1971 registration upon which First Bank System relies is a weak term. When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks. Freedom Savings, 757 F.2d at 1183; Sun Banks, 651 F.2d at 316. We have already discussed the dissimilarities between the 1971 registration and the FirstBank mark. Because the common feature of the two marks is weak, the dissimilarities weigh heavily against any likelihood of confusion.[13] Far from entitling First Bank System to a favorable judgment, this factor strongly suggests that a reasonable jury could only conclude that the marks are not confusingly similar.

_____

[12]We emphasize, however, that we consider the term FIRST BANK weakly descriptive, not generic. A party may be able to show that it has acquired secondary meaning in the term through extensive use within a specific trade area. See, e.g., First Fed. Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n, 929 F.2d 382, 385 (8th Cir. 1991) (where the ordinarily descriptive term FIRST FEDERAL acquired a special meaning in Pottawattamie County, Iowa). Furthermore, designs and logos may add distinction to the term.

[13]First Bank System's reliance upon Citibank, N.A. v. Citibanc Group, Inc., 724 F.2d 1540 (11th Cir. 1984) is unpersuasive. First Bank System claims that Citibank stands for the general proposition that a party cannot move its mark closer to a federally registered mark. Essentially, the argument is that when First Savings' adopted FirstBank in 1983 it moved its mark closer to the 1971 registration. The mere fact that a mark has moved closer to, or further from, a registration does not answer the ultimate question. Indeed, every time any mark is changed it will in some respect move closer to, or further from, one of the thousands of federal registrations. The extent of the move, as it relates to the Universal Money factors, is the relevant point. Furthermore, this case involves a weaker term, and far more substantial differences between the marks, than did Citibank.

-24-

**3.     Intent of First Savings in Adopting the "FirstBank" Mark**

We find no evidence in the record that First Savings adopted FirstBank with the intent to pass off its services as those of First Bank System or to benefit from the reputation or good will of First Bank System. To the contrary, the record indicates that First Savings was interested in establishing its own goodwill and reputation in the FirstBank mark. This also weighs against finding a likelihood of confusion.

**4.     Similarity of Services and Manner of Marketing Services**

To some degree, this factor weighs in favor of First Bank System. Both parties provide general banking services, and now do so in the same community. As most banks, both parties advertise by way of prominent exterior signs and the media.

In light of previously discussed factors, however, we do not find this factor significant enough to indicate a likelihood of confusion, particularly when it is recognized that First Bank System's branch-banking presence in the trade territory did not commence until 1995, long after the 1971 registration had expired, and the registered mark itself was not used by First Bank System after 1979. Thus, any potential confusion caused by similarities in the parties' services and methods of marketing does not appear at all likely to relate to First Bank System's 1971 registration, but rather to its use of other marks.

**5.     Degree of Care Exercised by Consumers and Evidence of Actual Confusion**

We find no evidence in the record with respect to the degree of care exercised by consumers choosing between providers of banking services, and very little with respect to actual confusion.[14] First Bank System has provided a research study of customer confusion within the trade territory, but the objective of the study is a comparison between First Savings' FirstBank mark and First Bank System's first mark and FIRST BANK logotype. The 1971 registration is only tangentially included in the study. The study's obtuse treatment of the 1971 registration, particularly in light of the other factors, does not weigh in favor of a likelihood of confusion.

In sum, we conclude that First Bank System was not entitled to prevail as a matter of law on the constructive notice defense. If we were to hold otherwise, we would in effect give First Bank System potentially nationwide rights, dating back to 1971, in FIRST BANK per se, even though these words alone almost certainly could not be registered. In the master service agreement between First Bank System and Metropolitan, First Bank System lists on an attached schedule thirty-three different service marks and trademarks in which it claims to have an interest. Twenty-two of the these marks are registered. We find it interesting that none of these registrations are for FIRST BANK per se, or even FIRST BANK with design. J.A. Vol. II at 641. Similarly, although First

_____

[14]Although by no means strictly necessary, evidence of actual confusion is often considered the best evidence of likelihood of confusion. Universal Money, 22 F.3d at 1534.

Bank System claims its 1971 registration already gave it superior rights in Kansas to FIRST BANK, it nevertheless sought in 1986, and was denied, a Kansas state registration for FIRST BANK. And, despite its alleged superior rights, First Bank System decided to use FIRST BANK KANSAS for former Metropolitan branches in Kansas, even though its general plan apparently was to make nationwide use of FIRST BANK per se for branches acquired in the merger.

Furthermore, if we provided the liberal treatment of the 1971 registration that First Bank System urges, we would place an unrealistic burden on entrepreneurs who search, and hope to rely upon, the federal registry. While service marks undoubtedly represent a beneficial form of monopoly, they are monopolies nonetheless, and should not be construed liberally unless the owner is clearly entitled. Natural Footwear, 760 F.2d at 1396. Accordingly, we reverse the district court's grant of summary judgment.

We also conclude, in light of the record and the proper legal standards, that further consideration of this defense on remand would be a pointless exercise. In its opinion, the district court noted:

> Neither side argues that this question is inappropriate for summary judgment. Nor does either side come forth with evidence on this issue that requires credibility calls. The document evidence submitted is not the sort that raises competing inferences. Both sides appear to agree the issue is ripe for summary judgment but only disagree as to the decision to reach.

First Savings Bank, 902 F. Supp. at 1376. Indeed, First Bank System argues that this case requires only the application of settled trademark principles to "undisputed events

occurring on undisputed dates." Appellee's Br. at 12. We agree. Having applied settled principles to the record, we hold that no reasonable jury could conclude that the marks are confusingly similar.[15]

First Bank System urges that we can uphold the judgment of the district court on the separate ground that First Bank System made prior use in Kansas of FIRST BANK and FIRST BANK SYSTEM. The record is not well developed on this issue. The district court never reached this point, and it may do so on remand.

## CONCLUSION

The order of the district court granting summary judgment in favor of First Bank System, Inc., and First Bank, F.S.B., is REVERSED. The case is REMANDED to the district court for further proceedings consistent with this opinion. This disposition forecloses only the constructive notice defense based upon the 1971 registration. The parties remain free to pursue all remaining claims and defenses, upon which we express no opinion.

Because there is no longer a final order in this case, the district court's orders relating to the discovery dispute remain interlocutory. However, by way of guidance on

---

[15] Our disposition makes it unnecessary to discuss First Savings' arguments relating to abandonment, or fraud in the procurement, of the registration.

-28-

remand, our review of these orders, and First Savings' arguments with respect thereto, do not reveal any reversible error.

REVERSED and REMANDED.