**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0256n.06
Filed: April 2, 2009

**No. 08-1773**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Citizens Banking Corporation, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Citizens Financial Group, Inc.; Charter One Bank, | ) | O P I N I O N |
| National Association; The Royal Bank of Scotland | ) | |
| Group PLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE:**     SILER, COOK, AND McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge**. This trademark action involves two banks with branches in nine counties in southeastern Michigan. Both banks use marks involving the word "Citizens." Citizens Banking Corporation ("CBC") is a Michigan bank that increased its presence in the nine-county area in recent years. Citizens Financial Group ("CFG") entered Michigan when it purchased Charter One ("Charter"), which had branches in the nine-county area. Upon learning that CFG intended to rebrand the Charter banks to "RBS Citizens," CBC filed this action for trademark infringement under federal and state law. The district court found that CBC's mark was a descriptive mark without secondary meaning, that there was no likelihood of confusion between the two marks, and that an injunction was inappropriate because there was no injury and because CBC had unclean hands. We

find that the district court did not err in its analysis of the likelihood of confusion, and, as an injunction is not warranted where there is no likelihood of confusion, we affirm.

## I.

### A. Citizens Banking Corp.

CBC began operations in Flint, Michigan in 1871. CBC operates 155 bank branches in Michigan, and it is the largest bank headquartered in Michigan. Overall, it is the seventh largest bank in Michigan. CBC has over seventy branches in the nine-county area at issue.[1] However, many of those branches were acquired recently. In late 2003, CBC expanded its presence in Oakland County. In 2006, CBC purchased Republic Bank ("Republic"). Republic had fifty to sixty banks in Michigan. CBC's presence in Monroe and Livingston counties came through its acquisition of Republic. CBC rebranded those banks as Citizens Banks in 2007. Republic also had branches in Ohio, and CBC rebranded those branches as Citizens Banks as well. CBC also acquired and rebranded F&M Banks, which had branches in Wisconsin. Throughout its expansion, CBC was aware of other banks in Michigan, Ohio, and Wisconsin that also used Citizens marks. Some of those banks competed in the same markets as CBC. CBC uses a red "weatherball" as its logo and a grey font for its name: .

---

[1]The nine counties are Ingham, Jackson, Livingston, Monroe, Oakland, Saginaw, Shiawasee, Washtenaw, and Wayne.

Though CBC has a strong presence in the Flint region, its internal documents suggest CBC is not as well known elsewhere in Michigan. In 2003, CBC considered changing its name. CBC's market research suggested a name change, in part, because "[t]he name sounds like every other bank." During the discussion, it was noted that Citizens was "a generic" name. Other market research found that "Citizens bank has no current brand equity in Oakland County" and that "[a]wareness of Citizens Bank [in Oakland County] is extremely low." CBC noted that, in the Detroit area, it lacked "name and business recognition." A CBC marketing vice-president wrote that "I've lived in Michigan most of my life and until I began working for Citizens Bank a year ago, I had NEVER heard of it." Citizens also considered changing its name in 2006 as it acquired Republic. In recent years, CBC has spent $5 million in advertising and $15 million in capital expenditures in the nine-county area.

### B. Citizens Financial Group

CFG was also founded in 1871. It began in the Northeast, and, since 1988, it has been a subsidiary of The Royal Bank of Scotland ("RBS"). CFG has been expanding its operations for over a decade, primarily by acquiring other banks. After each purchase, CFG would rebrand its new branches as Citizens Banks. It expanded into the Midwest through its acquisition of Charter in 2004. Charter had 1600 banks in six states, including Michigan and Ohio.

Beginning in 2005, CFG began a rebranding process in order to change the name of all of its banks to "RBS Citizens." CFG intended to spend between five and seven million dollars in promoting the RBS Citizens brand inside of Michigan. This rebranding would incorporate the daisy

wheel logo and the blue font that are part of the RBS logo into the mark used on each CFG branch:



In 2007, CFG contacted CBC to inform CBC of CFG's intended change and to discuss ways to co-exist in Michigan with similar brands. CBC construed this as notification of CFG's intent to infringe on CBC's trademark.

### C. Procedural History

In 2007, CBC filed suit in the Eastern District of Michigan seeking an injunction and a declaratory judgment. During litigation, CBC limited the area in question to nine counties, though CBC and CFG both have banks that would use Citizens marks in other counties in Michigan. CFG filed a counterclaim seeking an injunction against CBC's use of the Citizens mark in Ohio.

CBC introduced reports and testimony from two experts in support of its claims in Michigan. Dr. Eli Seggev conducted a survey of twelve counties in Michigan to test whether Citizens had acquired secondary meaning. The survey had 473 participants. Fifty-two percent of respondents identified the word Citizens with a single source. About 25% identified Citizens with more than one company. The survey asked those that identified Citizens with a single source what that source was. About 8% identified CBC as the single source. Upon learning that there were multiple banks in some of these counties that used Citizens in their names, Seggev re-analyzed his data, looking this time only at the nine counties in which CBC had the only Citizens mark. In this analysis, 52.6% of

the respondents identified Citizens with a single source. Seggev did not analyze which source these respondents identified as the single source.

CBC also commissioned Dr. Gary Bamossy to research the likelihood of confusion between CBC's mark and CFG's mark. Bamossy conducted four short internet surveys to test the likelihood of confusion if CFG rebranded its Michigan banks to RBS Citizens. Each survey asked the respondents to determine if two images were from the same bank, affiliated banks, or different banks. The first survey compared bank names, the second compared bank logos, the third compared bank advertisements, and the fourth compared bank signs. Bamossy's first two surveys used Chase as a control, though Chase had a substantially larger market share in the nine-county area than either CBC or CFG. Bamossy conceded in his deposition that this may have made Chase an improper control. Based on his surveys, Bamossy concluded that "confusion was going to go up considerably" if CFG rebrands in the nine-county area.

Before trial, the district court denied a motion for a preliminary injunction against CFG in Michigan. It also denied a motion for a preliminary injunction against CBC in Ohio. After a six-day bench trial, the district court found in favor of CFG. It certified the judgment as final, while holding in abeyance CFG's counterclaim involving Ohio. CBC filed a timely notice of appeal on June 4, 2008.

## II.

CBC alleges trademark infringement under both federal law and Michigan law. The parties do not dispute that the standards for federal trademark infringement also apply to Michigan law, and the Sixth Circuit has previously observed that the same likelihood of confusion test is used in both

federal and Michigan trademark infringement cases. *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 354 (6th Cir. 2006); *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1104-05 (6th Cir. 1991).

In order to receive protection under federal law, a plaintiff must demonstrate it possesses a protectible mark. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512-13 (6th Cir. 2007). Even if a plaintiff possesses a protectible mark, a plaintiff cannot succeed without showing a likelihood of confusion. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 763 (6th Cir. 2005). If a plaintiff successfully establishes both a protectible mark and a likelihood of confusion, an injunction is an appropriate remedy for trademark infringement. *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263-64 (6th Cir. 1985).

Thus, even assuming that CBC's mark is protectible, CBC must demonstrate that "the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). The Sixth Circuit applies an eight-factor test to assess the likelihood of confusion:

> (1) strength of the senior mark;
> (2) relatedness of the goods or services;
> (3) similarity of the marks;
> (4) evidence of actual confusion;
> (5) marketing channels used;
> (6) likely degree of purchaser care;
> (7) the intent of defendant in selecting the mark; and
> (8) likelihood of expansion of the product lines.

*Leelanau*, 502 F.3d at 515 (citing *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000)).

These factors are only a guide to determine the likelihood of confusion; they "imply no mathematical precision." *Homeowners*, 931 F.2d at 1107. After a bench trial, the district court's factual findings are reviewed for clear error while the district court's legal conclusion regarding likelihood of confusion is reviewed de novo. *Leelanau*, 502 F.3d at 515.

It is undisputed that the services are related and that they use similar marketing channels. The district court found that these factors favored CBC. The district court did not discuss the eighth factor, likelihood of expansion, and the parties do not address it on appeal. The district court then found that each of the remaining factors favored CFG. On appeal, CBC does not challenge the district court's finding with regard to the degree of purchaser care and the intent of the defendant. Accordingly, any argument with regard to those two factors is waived. CBC's waiver leaves two undisputed factors favoring CBC, similarity of goods and similarity of marketing channels, and two factors favoring CFG, degree of purchaser care and intent. CBC challenges the district court's assessment of the remaining three factors. We find that the district court did not clearly err in its assessment of the three remaining factors and that the factors, taken together, indicate there is not a likelihood of confusion.

**A. Strength of the Mark**

The strength of a mark "focuses on the distinctiveness of a mark and its recognition among the public." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002). "A mark's strength differs from its position on the distinctiveness scale. Strength is a combination of the mark's place on the distinctiveness scale and its degree of acquired distinctiveness, how well it is recognized in the marketplace and how clearly it is actually associated with a particular source." 5-5 GILSON

ON TRADEMARKS § 5.10 (footnote omitted).  Thus, even if a mark is on the strong side of the

distinctiveness scale, it can still be a weak mark if it has low recognition among the public.  *See*

*Therma-Scan*, 295 F.3d at 631; *Homeowners*, 931 F.2d at 1107.

Even assuming that CBC's Citizens mark is distinctive, the record is replete with evidence

of the weakness of the mark.  The district court appropriately noted third party use of the mark and

CBC documents that indicate the mark is weak.  These are appropriate bases for assessing the

strength of the mark.  Taking the evidence as a whole, the district court did not clearly err in finding

that CBC's mark was weak.

### 1.  Third Party Use of the Mark

The use of the mark throughout the state, country, and on the internet weakens the strength

of the mark.  *See, e.g.*, *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269-270 (4th

Cir. 2006); *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 654 (10th Cir. 1996);

*see also Daddy's Junky Music*, 109 F.3d at 281; *Homeowners*, 931 F.2d at 1108.  The record

indicates that three hundred banks nationwide use a Citizens mark, including five other banks and

a credit union in Michigan.  Additionally, the record made clear that many of those marks are in

use–particularly those in Michigan.[2]

CBC argues that *Ameritech, Inc. v. Am. Information Technologies Corp.*, 811 F.2d 960 (6th

Cir. 1987), prohibits the district court's reliance on national third party use of the mark.  This is not

so.  Instead, *Ameritech* holds that a district court cannot ignore evidence of a mark's local strength

---

[2]Indeed, it appears that CBC chose the nine-county area at issue in this appeal to avoid other banks that actively use Citizens marks in Michigan.

in assessing the strength of the mark. 811 F.2d at 967. The district court in this case considered evidence relating to the local strength of the Citizens mark as well as evidence of the mark's use by others. Therefore, the district court appropriately assessed third party use of the Citizens mark.

That third party evidence was particularly persuasive. As the Fifth Circuit noted, the use of Citizens in a bank name results in a "very weak" mark "which deserves little protection regardless of its classification [on the scale of distinctiveness]" where there are many other institutions using a Citizens mark in the state and hundreds more around the country. *Citizens Nat. Bank of Meridian v. Citizens Bank of Philadelphia Miss.*, No. 01-60820, 2002 WL 761301, at *2 (5th Cir. Apr. 19, 2002); *see also Citizens Nat. Bank of Meridian v. Citizens Bank of Philadelphia*, 157 F. Supp. 2d 713, 719 (S.D. Miss. 2001). Other courts have similarly found evidence that other banks' use of the same term in their marks is persuasive evidence that a mark using that term is weak. *See, e.g.*, *First Sav.*, 101 F.3d at 654; *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 (11th Cir. 1985); *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315-17 (5th Cir. 1981).

## 2. Documents from CBC regarding the Strength of the Mark

Evidence of consumer recognition of the mark is relevant to assessing the strength of the mark. *Homeowners*, 931 F.2d at 1107. The district court relied on evidence obtained from CBC that indicates its mark is weak. One report indicted that "differentiation [from other banks] will be difficult" because Citizens sounds "like every other bank." Another internal discussion suggested that "CBC does not have the brand awareness that other brands in our footprint have." A third document said that awareness of the CBC mark in Oakland County was "extremely low." Additionally, internal discussions noted that Citizens was a "generic" name and that CBC lacked

"name and business recognition" in the Detroit area. A CBC marketing vice-president also said that "I've lived in Michigan most of my life and until I began working for Citizens Bank a year ago, I had NEVER heard of it." The district court did not clearly err in finding that these statements are persuasive evidence that the CBC mark is weak.[3]

### 3. Conclusion

Regardless of the distinctiveness of the mark, the record is replete with evidence of the weakness of the Citizens mark. Given the ubiquity of Citizens as a mark in the local and national banking industry and the evidence from CBC that its mark was not strong, the district court did not clearly err in finding that CBC's Citizens mark is weak.

### B. Evidence of Confusion

Actual evidence of confusion is potentially strong evidence of a likelihood of confusion. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988). At trial, CBC provided a confusion log documenting twenty-two incidents of actual confusion between customers of CBC and CFG. It also offered four surveys to prove the likelihood of confusion. The district court did not clearly err in assigning minimal weight to this evidence.

---

[3]CBC contends that the district court erred in relying on CBC internal documents to demonstrate the local weakness of the Citizens mark. CBC argues that these documents "are unsupported by any methodology, foundation or support." This argument does not articulate a coherent challenge given the clearly erroneous standard of review for findings of fact. *See Harlamert v. World Finer Foods, Inc.*, 489 F.3d 767, 771 (6th Cir. 2007). CBC did not challenge the admissibility of this evidence either below or on appeal, and the district court weighed the evidence in the record in finding that CBC's mark was not strong. We cannot say that the district court committed a clear error in doing so. *See id.*

The district court found the confusion log was of limited utility because of the low number of incidents logged, the log was created before CFG used the RBS Citizens mark in Michigan, and because, at the time the log was created, both CBC and CFG were operating as Citizens Banks albeit in different states. As CFG was in the process of changing its name from Citizens Bank to RBS Citizens, the district court appropriately minimized the weight given to the log.

The district court also discounted the surveys. While surveys can provide evidence of confusion, "[w]here a survey presented on the issue of actual confusion reflects methodological errors, a court may choose to limit the importance it accords the study in its likelihood of confusion analysis." *Leelanau*, 502 F.3d at 518. In explaining its reasoning, the district court noted several flaws in the surveys, including the improper use of a control and the size of the weatherball in the surveys' representation of CBC's mark. The district court's findings are supported by the record, and so we find that the district court did not commit clear error in minimizing the weight given to CBC's surveys.[4]

---

[4]It is true that the fourth survey did not suffer from either of the flaws identified by the district court. However, the district court's finding of fact was that the surveys were "highly flawed." That the district court then went on to identify two of the flaws does not mean that the surveys were otherwise without flaw. Under clear error review, we may review the entire record. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985). We find that, based on the entirety of the record, the district court did not commit clear error in minimizing the weight given to the survey evidence. In addition to the flaws explicitly noted by the district court, the surveys also failed to mimic the purchase conditions associated with bank customers. *See Leelanau*, 502 F.3d at 518; *Coherent, Inc. v. Coherent Technologies, Inc.*, 935 F.2d 1122, 1126 (10th Cir. 1991); *see also* J. Thomas McCarthy, 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:2.50 (stating that a survey is only evidence of confusion if "the survey mirrors the real world setting which can create an instance of actual confusion"). As the district court made clear elsewhere in its opinion, bank customers make their purchase decisions after extensive research. The surveys, in contrast, were only five minutes long and did not provide the respondents the kinds of information typically relied on by bank customers.

### C. Similarity of Marks

The final factor challenged on appeal is the similarity of the marks. "When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *Daddy's Junky Music*, 109 F.3d at 283. The words in a mark and the mark's appearance are appropriate considerations. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004). The marks should be viewed in their totality, not simply broken down into their component pieces. *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987). Further, the marks should be considered as they would appear in the market place. *Wynn Oil*, 839 F.2d at 1187.

The district court found that the marks were dissimilar. The district court described CBC's mark as including the red weatherball (described by CBC as "our golden arches"), the colors used on the mark, and the font of the mark. It compared this to the daisy wheel logo and blue font used by CFG. The district court also noted that the terms of each mark were different: "Citizens Bank" and "RBS Citizens." The two marks appear as follows:





The differences between these two marks (number of words, color, font, and logo) outnumber the similarities. *Leelanau*, 502 F.3d at 517. Further, the addition of RBS to CFG's mark doubles the number of syllables in the marks as they are spoken. *See Little Caesar*, 834 F.2d at 572. "The

differences in sound and appearance are obvious," *id*., and therefore the district court did not clearly err in finding the marks are dissimilar.

### D. Conclusion

The assessment of whether the factors give rise to a likelihood of confusion is reviewed de novo. *Leelanau*, 502 F.3d at 515. As the district court did not commit clear error in any of its factual findings with regard to the factors for assessing the likelihood of confusion, all three of the disputed factors favor CFG. To summarize, the district court found the following: the marks are dissimilar, the CBC mark is weak, there is no evidence of actual confusion, purchasers exert great care in deciding on a bank, and CFG did not intend to infringe on CBC's mark. Weighed against that are the district court's findings that the services at issue are related and that the parties use similar marketing channels. Five factors favor CFG, while only two favor CBC. Further, the factors that favor CBC are not mark-specific, but instead relate to the fact that both CBC and CFG would operate banking services in the nine-county area. The mark-specific factors–such as the strength of the mark and the similarity of the two marks–all favor CFG. We therefore find that the district court was correct in concluding that there is no likelihood of confusion.[5]

### III.

---

[5]In determining whether to issue an injunction, the district court held that "any harm to Plaintiff is in the realm of minor annoyance, which is [sic] does not rise to the level of actual injury." "In trademark infringement, it is not necessary for plaintiff to prove actual damage or injury to obtain injunctive relief." J. Thomas McCarthy, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30.10 (2008); *see also Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006); *Frisch*'s, 670 F.2d at 647. As such, the district court erred in finding the lack of an actual injury affected whether it should grant an injunction. This error was harmless, however, as the district court had already found that there was no likelihood of confusion. For the same reason, we find that any error in the district court's application of the unclean hands doctrine was harmless.

Without any likelihood of confusion, CBC was not entitled to an injunction.  Therefore,

we **AFFIRM** the judgment of the district court.